Ex Parte Jim Keith.

No. 3007.    Decided November 23, 1904.

**1.—Local Option—Election Law—Notice.**

It is only necessary to comply with the character of notice required under the local option election law, to wit: at least twelve days' notice prior to the day of election, and not twenty days as provided by the Act of the Twenty-eighth Legislature, p. 133, which does not apply to local option elections.

**2.—Same—Repeal by Implication Not Favored.**

The law does not favor repeals by implication, and unless there exists an irreconcilable conflict between the two laws, both will stand, especially in the case of a subsequent general law and a pre-existing special law partly on the same subject.

**3.—Same—Notice—General Election—Local Option.**

The so-called Terrell election law being general in its scope, and the local option law special in character, both may stand, and the provision of twenty days' notice of election in each election precinct of the Terrell law has no application to elections under the local option law.

**4.—Same—Former Law—Judicial Construction.**

Where there is no essential difference between the former general election law and the Terrell law, and the former law has been judicially construed with reference to the question of notice of election provided for in elections under the local option law, such construction must prevail as to the new general election law.

**5.—Same—Legislative History—Inference.**

Where contemporaneous legislative history discloses no legislative intent to repeal any provision with reference to notice in local option elections, it is legitimate to infer that there existed no purpose to do so, by the passage of the Terrell election law, by implication.

From Erath County.

Original application for habeas corpus for release from arrest for violating the local option law, which was claimed to be invalid under act of the 28th Legislature, p. 133, known as Terrell election law.

The opinion states the case.

No brief for relator.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—This is an original application for the writ of habeas corpus, which was granted by the presiding judge, and is now before us upon an agreed statement of facts for decision. Relator was arrested under proper complaint and information for violating the local option law in Erath County; and relies for his discharge from arrest on the invalidity of the local option law of Erath County.

Relator insists that the notice for the local option election was not published for twenty consecutive days, as provided by what is known as the "Terrell Election Law," passed by the 28th Legislature. (See Acts 28th Leg., p. 133, 1903.) The statement of facts shows that the notice of said local option election was posted in each of the twenty-seven precincts of said Erath County for twenty days next before the day of said election on June 11, 1904. In view of the agreement that 27 notices were posted at the respective voting boxes, the statement of facts containing no description of said notices, we will presume they were such as required by law. In our view of this case it is immaterial whether such notices were published for the twenty consecutive days required by the Terrell Election Law. We hold that, in order to make a valid local option election, it is only necessary to comply with the character of notice required under the local option election law, and that the Terrell Election Law does not repeal by implication any of the provisions of the local option law. This question was decided by us in Shields v. State, 38 Texas Crim. Rep., 252. Article 3387 of the local option law, provides: "The clerk of said court shall post or cause to be posted, at least five copies of said order at different places within the proposed limits, for at least twelve days prior to the day of the election, which election shall be held and return thereof made, in conformity with the provisions of the general laws of the State, and by the officers of election appointed and qualified under such laws." Article 3389, provides: "The officers holding said election shall in all respects not herein specified conform to the existing laws regulating elections, and after the polls are closed shall proceed to count the votes, and within ten days thereafter make due report of said election to the aforesaid court." An inspection of other clauses of the local option law shows that the time of counting the result of the local option election is different from the Terrell Election Law, and if the Legislature had intended any character of repeal, some direct expression would have been made in the Terrell Law with reference to local option law. As stated above, the only insistence that relator makes in reference

to the validity of the local option law in Erath County is, that the notice was not published according to the Terrell Election Law. Prior to the Terrell Election Law, in passing upon whether or not the provisions of the general election law repealed or controlled the provisions of the local option law in reference to notices, etc., Judge Stephens, delivering the opinion of the court, in Voss v. Terrell, 34 S. W. Rep., 170 (Texas Civ. App.), held, that said general election law did not apply to the local option law; and among other things says, reviewing Art. 1685, Revised Civil Statues, in reference to the general election: "Where any election is ordered, at least twenty days' notice, etc., should be interpreted with reference to the various elections provided for in that chapter and under that title, and not to elections provided for and regulated under a different title." Then he cites Article 1759, which expressly provides, in substance, that this construction should prevail; but the whole tendency and trend of the decision shows that this clause would not have changed the construction of the law if the same had not been contained in said general election law. This decision has been approved in Roper v. Scurlock (Texas Civ. App.), 69 S. W. Rep., 456.

Relator insists that the Terrell Election Law repealed by implication the local option election law. We cannot agree with this construction of the law. It will be observed by an inspection of the Terrell Election Law that it does not propose or attempt in any of its provisions to change the general election law with reference to ordering the election for the various things and purposes involved in the general election law, prior to the time of the adoption of the Terrell Election Law. In other words the general election law contained in the Revised Statutes of 1895, provided for the election of certain State, county and municipal officers; and among other provisions stated that the notice of election should be posted twenty days. Now, the Terrell Election Law in this respect is but a bare enlargement of the old general election law as to the purpose for which the election could or should be ordered. The main insistence of relator, indicating a repeal, appears to be Section 41, which reads: "Twenty days' notice of every election ordered shall be given by notice posted up at the places of holding elections in each election precinct, which shall state the time of holding the election, the offices to be filled, and the question to be voted on, or both, as the case may be, except as herein otherwise provided." This section and Section 42 of the Terrell Election Law are almost literal copies of the general election law that existed prior to the Terrell Election Law. Then, relator cites Section 53 prescribing the oath of officers. This, in most of its salient features, is a re-enunciation of the old oath of office contained in the old election law. Section 59 of the Terrell Election Law is a bare enunciation by the Legislature that they did not intend to change the mode and manner of electing district or school officers of a city, town or village. Relator cites Section 73, which provides, that nothing stronger than coffee should be drunk by the officers holding the election. Then Section 76, which provides there shall be but one official ballot for each political party lawfully

nominating a candidate for office to be voted for at each general or special election in each county, city or town. Certainly, these provisions cited could not militate against the former construction of the local option law, and especially the latter provision, since the question of "political party" has nothing whatever to do with the adoption of the local option law. Section 61 provides, that in holding elections the voters shall have paid a poll tax. The main insistence appears to be, as stated, upon Sections 41 and 144, which reads: "This act is cumulative as to penalties for violating the election laws of the State and as to the mode and manner of any law, except such laws as are inconsistent with it, or in conflict herewith; provided this act shall not apply to any election held prior to February 1, 1904."

"It is a reasonable presumption that the Legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention. (Hence it is, a rule founded in reason as well as in abundant authority, that, in order to give an act, not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, the effect of repealing it; the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law, so positive as to be irreconcilable by any fair, strict or liberal construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law, and construing both together in harmony with the whole course of legislation upon the subject.") Endlich on Inter. of Stat., Sec. 210. A general law does not abrogate an earlier special one by mere implication. The law does not allow the exposition to revoke or alter, by construction of general words, any particular statute, where the words of the two acts, as compared with each other, are not so glaringly repugnant and irreconcilable as to indicate a legislative intent to repeal, but may have their proper operation without it. Endlich on Inter. Stat., Secs. 223, 228. This author also supports the proposition that although an act contains a repealing clause of a previous law on the subject, this clause must give way to a rational interpretation of the legislation in order to give intent to the legislative mind. (Endlich In. Stat., Sec 43.)

The Terrell Election Law is a general statute; the local option election law is a special statute, relating to localities. In Laredo v. Martin, 52 Texas, 561, we find this language: "The act upon which appellees rely to revoke the power given the city, is the general act to regulate ferries; but there is no allusion to the act incorporating the city of Laredo, or to the power conferred by it upon the mayor and aldermen to establish ferries within its corporate limits. It is too well settled that the general law does not by implication repeal a special one, although both relate to the

same subject matter." In Ellis v. Bates, 26 Texas, 703, Moore, J., uses this language: "The literal import of the statute is broad and unlimited, and if we can suppose that the Legislature intended that it should be strictly and technically construed, it would annul all titles when there had been a failure to return the field notes within the time prescribed, no matter what were the circumstances which prevented it, and any one might locate a certificate upon it. We do not believe that such was the object and purpose of the Legislature in enacting this statute. Surely they did not intend when they say, 'That the land shall be subject to location by any person holding a genuine land certificate,' to change the law which forbids the commissioner of the general land office, surveyors, etc., from locating public domain during their terms of office. Yet the literal meaning of the language used would lead to that conclusion. And it would be more reasonable to hold this than that it was the intention of the Legislature to deprive a party of his land for his failure to do an act which he was forbidden by law from doing. * * * It is a well settled rule for the construction of statutes that a general law will not be held to repeal a particular and special one upon the same subject. This rule would appear to be applicable to the section of the statute in question." (See also Ex parte Cross, 44 Texas Crim. Rep., 376.)

In Herndon v. Reed, 82 Texas, 647, 18 S. W. Rep., 665, Judge Gaines, delivering the opinion of the court, and quoting from Judge Storey, in Wood v. U. S., 16 Peters, who was passing upon repeals by implication, says: "We say 'necessary implication,' for it is not sufficient to establish that subsequent laws cover some, or even all, of the cases provided for by it; for they may be merely affirmative, cumulative, or auxiliary. There must be a positive repugnance between the provisions of the new law and those of the old; and even then, the old law is repealed by implication only pro tanto to the extent of the repugnancy. Mr. Bishop, in course of a discussion of the doctrine of repeal by implication, says: 'Hence in principle, and equally on the better American authorities and on the English, the just doctrine is that, without exception, a statute in affirmative terms, with no intimation of an intent to repeal prior laws, does not repeal them, unless the new and old are irreconcilably in conflict.' " See also Walker v. State, 7 Texas Crim. App., 257; Ex parte Creel, 29 Texas Crim. App., 439; Morales v. State, 36 Texas Crim. Rep., 234; Braun v. State, 40 Texas Crim. Rep., 236; Less v. Ghio, 92 Texas, 651, 51 S. W. Rep., 502; Steamboat Co. v. Collecton, 11 Wall., 622; also U. S. v. Tyner, 11 Wall., 92.

As stated above, and as supported by the long array of authorities cited, repeals by implication are not only not favored, but there must be an irreconcilable conflict between the two laws. In fact, the latter authorities cited seem to hold without qualification that a subsequent general statute will not repeal a pre-existing special law. It can not be seriously insisted that the local option law is not a local or special law, since it only becomes a law by adoption in the respective counties and precincts. Prior to the adoption of the Terrell Election Law, there were

apparent conflicts as stated above, between the general election law, with reference to the twenty days' notice, and the local option law. This court upheld the validity of a local option law where the notice had been posted twelve days, in the face of the very apparent contradiction between such law and the general election law. Now then, the mere fact that the Terrell Election Law changed the mode and manner of holding the election, does not operate to repeal the local option law, since said law, by two of its provisions above cited, says that an election for local option shall be held according to the provisions of the general election law. Certainly when said provisions are amended, the amendments would apply. Constitutional amendment provided for the payment of poll tax, and this is a provision of the Constitution disassociated from and disconnected from . the Terrell Election Law. The mere fact that the same provides that persons voting should have paid their poll tax, does not conflict with the local option law, since the local option law itself says, that elections under the same shall be held according to the provisions of the general election law. It is a well known rule of statutory construction that where one statute refers to another, and such other statute is amended, such amendment would be included in the reference to such previous law. It is not necessary to cite authorities on this proposition.

Furthermore, we take it, in construing the legislative intent in the adoption of a statute, we can take into consideration contemporaneous legislative history of the act. (Endlich on Inter. of Stat., Secs. 30 and 33; Black Inter. Stat., Secs. 212, 214.) Smith v. Townsend, 148 U. S., 490. In recurring to said history, the writer finds, as disclosed by the legislative journals, that the only purpose, object and intent in the passage of the Terrell Election Law was to supersede the old general election law, and strengthen its provisions in reference to the manner of holding elections. There was no thought or intention of changing the whole election system of Texas, except in the manner of holding elections. This view is strengthened by further legislative history as disclosed by said Journals, in that there was an abortive attempt to change some of the provisions of the local option law at the same session at which the Terrell Election Law was passed—but this bill failed in the Legislature. It is true that the bill which was defeated did not attempt to change the time of holding the local option elections, but it did purport to change one of its most salient features. We take it, that the clear inference can be drawn from said fact, that the Legislature did not contemplate at said time that the Terrell Election Law should amend the local option law or in any manner or means interfere with the notices required under the local option law.

We have reviewed the authorities at length in deference to the insistence of relator, and are confident that his position is not in consonance with the previous decisions of this court, the Court of Civil Appeals, and the Supreme Court of this State; and is not supported by the elementary authorities on the construction of statutes. We hold that the Terrell Election Law did not by implication repeal the local option law in any

of the provisions insisted upon. The relator is accordingly remanded to the custody of the officer.

*Relator remanded to custody.*

I agree to the conclusion reached, and will express my views.—Henderson, Judge.

HENDERSON, Judge (concurring).—In the opinion of my brother Brooks, the facts connected with the case are stated, and in discussing the questions, reference is here made to same. As the subject is one of some interest, in addition to what was said in that opinion, I desire to make a few observations.

The real question here involved is, whether the Terrell Election Law, which requires notices of all elections to be posted for twenty days in all election precincts of the territory where an election is held, or whether the local option election law, which requires five notices to be posted for twelve days in the territory to be affected, applies. That is, whether the Terrell Election Law supersedes and annuls the local option election law on this subject. As incident to this a larger question is embraced, that is, whether the Terrell Election Law repeals by implication the provisions of our local option law regulating elections for that purpose, regardless of whether these provisions be with reference to the mode and manner of holding elections or matters preliminary thereto.

It is conceded that the Terrell Election Law is later in point of time than the local option law. It is also conceded that if the later law effects a repeal, it is not by expression but by implication. No one will dispute the proposition that repeals by implication are not favored. The rule on this subject is well stated in Harold v. State, 16 Texas Crim. App., 157.

As a corollary to the above rule and lending strength in its application to this case, I desire to state two other propositions: 1. That while a general law will repeal a special law even by implication, the intent of the Legislature to repeal the special act by the general act, must be placed beyond any reasonable question. On this subject I quote from the text of Sutherland on Stat. Construction (Secs. 157, 158, 159), citing numerous authorities in its support. "It is a principle that a general statute, without negative words, will not repeal by implication from their repugnancy the provisions of a former one which is special or local, unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the Legislature contemplated and intended a repeal. * * * The general law can have full effect beyond the scope of the special law, and, by allowing the latter to operate according to its special aim, the two acts can stand together.

Unless there is plain indication of an intent that the general act shall repeal the other, it will continue to have effect, and the general words with which it conflicts will be restrained and modified accordingly. * * * These interpretations harmonize with the rule that when a general intention is expressed, and also a particular intention,
Vol. 47 Crim.—19.

which is incompatible with the general one, the particular intention shall be considered an exception to the general one." Mr. Black, on this subject, uses the following language: "This rule is founded upon or expressed by the maxim, *generalia specialibus non derogant.* Thus, when the provisions of a general law applicable to the entire State are repugnant to the provisions of a previously enacted special law, applicable in a particular locality only, the passage of such general law does not operate to modify or repeal the special law, either wholly or in part, unless such modification or repeal is provided for in express words or arises by necessary implication. A local statute enacted for a particular municipality, for reasons satisfactory to the legislature, is intended to be exceptional and for the benefit of such municipality. It has been said that it is against reason to suppose that the legislature in framing a general system for the State intended to repeal a special act which the local circumstances made necessary." See Black Inter. Laws, p. 116; Endlich on Inter. of Stat., sections 230, 231.

The application of the above rule is made manifest when it is considered that the Terrell Election Law is general in its scope, covering the entire State, and the local option election law is special in its character, relating only to localities voting on the question of local option.

Another proposition that refers itself directly to the matter under consideration is the following: 2. Where the Legislature has enacted a general law on a given subject, and a special law relating to the same subject matter in part, and these laws have been construed by the courts in pari materia,—that is, the courts have so construed them as to permit both to stand—and subsequently the Legislature passes another act on the general subject, it will be presumed to have taken notice of the former laws on the same subject, and the construction placed thereon by the courts. The last general act of the Legislature on the same subject, as the prior act, will not be held to repeal the special law, unless the intention of the Legislature to work a repeal is manifest—I had almost said, it cannot be done, unless by express provision.

Now, if it shall transpire that the former law on the subject of elections (Rev. Civ. Stat., title 36) is the same in all its essential features, so far as the local option election law then existing was concerned, as the later Terrell Election Law (Gen. Laws, 28th Leg., p. 133) in its essential features regarding local option, and if the courts have harmonized the former existent laws and given effect and operation to both, within their particular spheres; then it must follow that as between the Terrell Law and the former special law the same construction must be adopted, unless it shall be shown that the former interpretation was radically wrong. In Shields v. State, 38 Texas Crim. Rep., 252, this very question of a difference in the time of notice as between the general election law and the local option election law, was before the court. It was there held that the local option law prevailed within its territory. I quote from the language of that decision, as follows: "It is contended by appellant that the notice of the election must be

posted within each voting precinct in the county, and he refers us to the acts of the 22nd Legislature, p. 13 (which is now article 1728, Revised Civil Statutes—General Election Law) regulating special elections. This act has no reference to local option elections. We have a special provision in regard to local option elections, which is, that the five notices must be issued and posted in the territory to be affected. See article 3387, Rev. Civ. Stat., 1805. We hold that these two statutes are independent of each other; that the statute of 1891 was made to apply to special elections generally with reference to notice, while local option elections are regulated by the statute passed for that purpose." Voss v. Terrell, 34 S. W. Rep., 170; Roper v. Scurlock, 69 S. W. Rep., 456. These two last mentioned cases were opinions rendered by our courts of civil appeals on this subject; and they hold that the two laws are independent of each other, the one applicable to elections generally, as to notice; and the other operative with reference to local option elections as to notice. In reaching the conclusion they did, our courts, both criminal and civil, must have had in view the essential difference in the two laws; the one pertaining to elections generally and the other pertaining to an election of a special character, to wit: local option. The latter act provides the machinery peculiar to itself and under the distinct provision of the Constitution authorizing local option elections. That provision of the Constitution *requires the Legislature "to enact a law whereby the qualified voters"* of the county, *or of the named subdivision thereof,* "may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within prescribed limits." That mandate of the Constitution was complied with by the Legislature, and they provided how an election should be brought about, what preliminary steps should be had, and then referred the matter as to how the vote should be taken to the provisions of the general election law. Article 3387, among other things, provides: "Which election shall be held and the returns thereof made in conformity with the provisions of the general laws of the State, and by the officers of election appointed and qualified under such laws." Article 3389 provides: "The officers holding said election shall in all respects not herein specified conform to the existing laws regulating elections," etc. Thus making provision as to the manner of holding elections, in harmony with the general election law of the State and in consonance therewith. It may also be stated as a significant fact, while the Terrell Act mentions other special elections, such as municipal and school elections (see sections 44–59) it nowhere refers to local option elections, by name. No wonder the courts have held that the two statutes, though relating in a measure to the same subject matter, could stand together, each revolving in its own orbit—the local option election law in some of its details being peculiar to itself, especially as to the preliminary steps to be taken in order to bring about an election. These relate to the application for the election, the order granted by the commissioners court for holding the same, the character of notice to be

given, and number of copies and time to be posted, and also requiring return of the votes to be made to the commissioners court to be counted by them, and the result declared, etc.   These provisions relate solely to an election of this character, and are different from the provisions to be found in the general election law relating to the same subject.   It would seem to follow if the provision with reference to time of posting notice is repealed, that all of the other provisions out of harmony with the general election law, are also nullified.   Such a result was never contemplated by the Legislature in passing the general election law.

· The question then presents itself, what new words of repeal or annulment are embraced in the Terrell Election Law which were not contained in the former general election law.   In all reasonable intendment it rests with those who assert an essential difference, to point it out. The old election law, as well as the Terrell Election Law, intended to take its place, refers to special elections as well as general elections: both prescribing the character of notice to be given of the election, and by whom; both prescribing the character of ballot, and both prescribing the manner and form of holding the election.   The only radical difference between the two laws relates to the qualification of votes— the latter act prescribing a poll tax qualification.   This no doubt constituted the reason for the passage of the Terrell Law and differentiates it from the former law on the subject.   In addition it may be mentioned that the Terrell Law relates to primary elections, which the former act did not embrace, and also prescribes penalties for violating the law which the former act did not.   So there is nothing in the contention, that the Terrell Election Law, as to local option, has legislated on other new subjects not in harmony with the local option law, and tending to repeal it by implication.   It is said, however, that the last clause of the Terrell Law, to wit, section 144, operates a repeal of the local option election law.   It reads as follows: "This act is cumulative as to penalties for violating the elction laws of the State and as to the mode and manner of any law, except such laws as are inconsistent with it, or in conflict herewith; provided this act shall not apply to any election held prior to February 1, 1904."   It will be noted that those who insist on a repeal of the local option election law, emphasize the language: "as to the mode and manner of any law," contending that this language absolutely implies a repeal of the local option election law as to notice, as well as other preliminary steps.   Whether this relates to cumulating penalties, as to mode and manner of holding elections, or is cumulative merely as to the mode and manner of holding elections, it occurs to us, makes no difference in the construction to be placed on the language.   The mode and manner of holding elections naturally and reasonably relates to the day of holding the election, and what then transpires.   Norman et al. v. Thompson et al., 6 Texas Ct. Rep., 607, 72 S. W. Rep., 62.   So there is no inconsistency between the provisions of the local option law, which refers to the mode and manner of holding elections, to those who are to vote at the same, and the

officers holding the same, and the general election law. This construction does not operate a repeal, but harmonizes the two laws. If it were an original proposition as to whether or not the Terrell Election Law repeals the local option election law as to the preliminary steps to be taken, particularly as to the notice to be given, I see no escape from the proposition, that the two laws can be harmonized and can stand together. To re-state the case: the local option election law, in regard to how and by whom the election is to be ordered, the character of notice to be given, by whom, and the time and manner of pósting same; and also with reference to the character of ballots to be used, and by whom the final count of the vote is to be made, requiring it to be done by the commissioners court on the 11th day after the election, in order that the result may be declared by the proper authority, and notice thereof given, differs essentially from the Terrell Law as to these matters; but the latter does not operate to repeal the former on that account. On the contrary it is evident the Legislature never intended to bring about such a result. Understanding the construction placed by the courts, as between the former general election law and the local option election law, as it is presumed to, and knowing that they had been harmonized, so that both should stand within their respective spheres, it was never contemplated by that body, that the Terrell Law should annul the provisions of the local option election law in the respects above referred to. The former by its terms refers generally to the whole State, and the latter exceptional, and referring to the particular locality only. If a repeal had been intended under the circumstances here manifest, the Legislature would not have used vague and shadowy phraseology, but apt and explicit language would have been employed demonstrating that purpose.

The local option election law, by referring to the general election law as to who has the right to vote and as to the mode and manner of holding the election (which is provided for by the Terrell Law), stands under the shadow of that law, as to all that relates to voting on the day of the election. Whatever purity at the ballot box is guaranteed by that law, is equally guaranteed to those who vote at a local option election. At the same time those safeguards erected by the law-makers for a local option election, whereby the qualified voters can declare themselves in favor of or against local option in a particular territory, are preserved. To declare that the Terrell Election Law, as to these preliminary matters provided for in the local option election law "repeals the former by necessary implication," would produce inextricable confusion, and operate a result never intended by the law makers; and, in my view, would do violence to all the rules of statutory construction on this subject.