## WILL HANNA v. THE STATE.

### No. 2887.    Decided May 17, 1905.

**1.—Local Option—Orders of Commissioners Court—Special Session.**

Where no action was taken on a previous order of the commissioners court towards holding an election, and although this order was not in terms set aside at a special session of said court following the term at which the first order was entered, still the action of said court on its own motion at said special session in ordering a local option election for a different date was tantamount to setting aside the former order on the subject, and the election was properly held on the last order.

**2.—Same—Official Ballot—Tickets—Election Laws.**

The local option election law controlling all the preliminary steps regarding an election for local option, there was no impropriety in using two separate slips of paper as tickets, with "for prohibition" endorsed or printed on the one, and "against prohibition" on the other; nor was it required that the words "official ballot" should appear at the head of the ticket; and even under the Terrell election law such ballots, unless in connection therewith some fraud was shown, would be counted.

**3.—Same—Power of Commissioners Court to Declare Result of Election.**

It was in accordance with the provisions of the local option law for the commissioners court to declare the result and make the order to the effect that when the result had been published the required length of time local option should go into effect. At any rate the county judge signed said order, and because the commissioners court signed it with him would not vitiate it.

**4.—Same—Agency—Charge Refused—Defendants' Denial of Transaction.**

Where the defendant denies the entire transaction, there was no necessity of submitting a charge on agency in a case of local option. See opinion for facts which did not raise the issue of agency in a trial for a violation of the local option law, where a requested charge on that subject was correctly refused.

**5.—Same—Testimony Must Be Material.**

Where the record did not show that the witness who was sought to be impeached by cross-examination testified to any material fact against the defendant, the action of the court in excluding a legitimate question and answer will not be reviewed.

**6.—Same—Newly Discovered Evidence—New Trial.**

Where the testimony of the witness could have been discovered by the use of reasonable diligence and was of an impeaching character as well as cumulative of defendant's theory of defense, there was no error in refusing a new trial on that ground.

Appeal from the County Court of Bosque. Tried below before Hon. P. S. Hale.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*Dillard & Ward* and *Cureton & Cureton,* for appellant.—7 Am. & Eng. Enc. Law, 1009; 17 id., 816–824; Ex Parte Sublett, 23 Texas Crim. App., 309; Boom v. State, 10 id., 418; Field v. Hall, 40 S. W. Rep., 749; Kimberly v. Morris, 31 S. W. Rep., 812. On question of Official Ballot: 10 Am. & Eng. Enc. Law, 709; Ex Parte Riggs, 29 S. E. Rep., 645.

*Howard Martin,* Assistant Attorney-General, for the State.—Ripey v. State, 10 Texas Ct. Rep., 927.

HENDERSON, JUDGE.—Appellant was convicted of violating the local option law in Bosque County.

Appellant excepted to the introduction of the orders of the commissioners court authorizing a vote on local option in said county, and to the orders relating to the result and putting local option into effect on various grounds. He objected to all of said orders, because said election was held in pursuance of an order by the commissioners court of their own motion, made on February 18, 1904, ordering said election to be held on Saturday, March 19, 1904, on the ground that said court on the petition of the required number of voters in said county had, on February 12, 1904, ordered an election to be held, on March 5th, in said county, to determine whether or not local option should be adopted therein. In connection with his bill of exceptions, appellant has exhibited the previous order of the commissioners court made as alleged by him. He contends that this previous order exhausted the power and jurisdiction of the commissioners court on the subject, and whether the subsequent order made at a special term was for the purpose of correcting the former order on the question of the date of holding the election, or was a new and original order, it was not competent for the commissioners court at a subsequent term to correct an order made at a former term, nor was it competent, the former order not having been set aside, for them to exercise jurisdiction and order a new election. He particularly urges that this could not be done at a special session of the commissioners court. As to this last objection, it has been held by this court that an order for a local option election could be made at a special term; and so there is nothing in this objection. It is not shown that the special session was called for the particular purpose of ordering a local option election, nor would it matter if it was shown that such was the purpose of the special session. We do not consider the action of the commissioners court on February 12th, as an amendment merely of the former order of the court, as to the date of holding said election, but it was a new order or judgment of the court, made on its own motion, authorizing a local option election. If any action had been taken on the former order of the court, especially if an election had been held thereunder, a different question would present itself from the one here involved. As shown no action was taken on the previous order; and although at the special session the previous order

of the court was not in terms set aside, the action of the commissioners court on its own motion in ordering a local option election for a different date, was tantamount to setting aside the former order on the subject. The election was held under the last order, and we hold it was entirely competent for the court to have made this order. Even if two judgments are rendered on the same cause of action, and no steps are taken to satisfy the first judgment, but the last judgment is satisfied, that would afford a complete bar to any proceedings on the former judgment. The general doctrine is that the last judgment prevails. Freeman on Judgments, 3rd edition, section 332.

It is also contended that the ballots cast at said election were not legal ballots, because "for and against prohibition" was not written on the same slips of paper; and because the tickets were not headed, "official ballot." The contention being that as to the form of the tickets the Terrell Election Law prevails. In Ex parte Keith, 83 S. W. Rep., 683, which involved the question as to whether or not the notice of holding the election should be given according to the Terrell Law, or according to the local option law, it was held that such notice should be given according to the local option law. But it was incidentally held that as to all preliminary steps, with reference to holding said election, including the character of notice to be given, the number of copies and time to be posted, and also requiring return of the votes to be made by the commissioners court, to be counted by them and result declared, etc., that these provisions being peculiar to the local option election law, and not provided for in the Terrell Law, the local option election law prevailed. In fact that all of the preliminary steps regarding the local option election, except the mode and manner of holding the election on the day thereof, which the local option law provided for by referring to the general election law, was controlled by the local option election law, which was paramount and decisive of all such preliminary matters. The Constitution required the Legislature, at its first session to pass a law whereby the voters of certain territory may by a majority vote determine from time to time, whether the sale of intoxicating liquor shall be prohibited within the prescribed limits. In pursuance of this authority, the Legislature in passing the local option election law, in article 3388, Revised Statutes, provides the character of tickets to be used; and it will be seen that this article does not require that said tickets be headed "official ballot." Nor does said law require that but one ticket be used, with "for prohibition," and "against prohibition" endorsed on the same ballot or slip of paper. There is nothing suggesting the impropriety of using two ballots or slips of paper, with "for prohibition" printed or endorsed on the one, and "against prohibition" endorsed or printed on the other. However, if it should be conceded that the Terrell Law applied as to the designation of ballots, that is, "official ballots," still we take it, this would be merely directory and not a mandatory regulation. The failure to endorse on any ballot or ballots "official ballot" would not necessarily exclude it, unless in con-

nection therewith some fraud was shown. If it was a fair ballot, properly cast, it would be counted, although it might not have the heading required by the Terrell Law "official ballot." For a discussion of the latitude allowed, and the liberality of courts in counting ballots not in compliance with the law regulating elections, see McCrary on Elections, chapter 14, articles 493 to 514, inclusive. We accordingly hold that, because the voters used separate ballots, those voting for prohibition using one, and those voting against prohibition using another, and neither of these being endorsed "official ballots" did not vitiate the election. We believe it was entirely competent, in accordance with the provisions of the local option law, for the commissioners court to declare the result and make the order to the effect that when the result had been published the required length of time, local option should go into effect. At any rate the county judge signed said order, and because the commissioners court signed it with him, would not vitiate it. The certificate of the county judge to the publication was in accordance with the provisions of the law.

Appellant requested the court to instruct the jury, as follows: "If the jury believe defendant took the money of Clarence Hanson, and with it procured a quart of whisky for the said Hanson, and defendant did so at the request of said Hanson to assist him in making the purchase of said whisky, and defendant had no further interest in the sale as alleged, then defendant is not guilty of making a sale, although he did take the money of said Hanson and did purchase and procure the same from some other person; and if you have a reasonable doubt as to whether said Hanna was acting as the agent of the purchaser, you will acquit the defendant." This was refused by the court, and error is assigned. Unquestionably, if there was a phase of the case arising from the evidence, a charge of this character should have been given by the court, inasmuch as in the court's charge there was no instruction on the subject of agency for the purchaser. However, we do not believe a fair review of the testimony suggests this question of agency for the purchaser. So far as the defendant's own testimony is concerned, he denies the transaction entirely. He denies he handed prosecutor any whisky, either for himself or any other person. The State's testimony simply shows that Hanson, the prosecutor, went to the restaurant of appellant, in order to get some whisky for prosecutor; that appellant had told him some two weeks before that he could save him the express on any whisky he might want to order; that he handed him a dollar, and asked him if he could get him some whisky, and he stated he would try; that he took the dollar, walked off and returned in about ten minutes with a quart of whisky, wrapped up in a newspaper, which he gave prosecutor, between the restaurant and the court-house; that he had it under his coat, and when he gave it to him no one else was there. This witness further stated that, according to his recollection, the name Will Hanna, was on the bottle. There was testimony pro and con as to whether appellant Hanna had any whisky

of his own or as much as a quart at the time of said transaction. But we do not think this testimony was sufficient to raise the question of purchase by appellant from some one else. According to the testimony of the State he made no such suggestion. He did not indicate that he got it from any person, but having received the dollar, about five or ten minutes thereafter brought the whisky back. As stated before, appellant denies the transaction altogether. We do not believe the other testimony is sufficient to raise the question of agency. In fact, the charge on that subject, it seems to us, was calculated to impinge on appellant's defense that he had nothing to do with the transaction. Taylor v. State, 8 Texas Ct. Rep., 1006; Rippey v. State, 10 Texas Ct. Rep., 927. This is not like the case of Chote v. State, 83 S. W. Rep., 377, cited by appellant.

When witness Monroe Robertson was on the witness stand, after he had testified upon direct examination for the State, counsel for defendant, asked the following question, "Is it not a fact that you were informed by the grand jury, that they had indicted you for selling whisky to Clarence Hanson on election day, and is it not a fact that you went before the grand jury and made a trade with them, by the terms of which you were not to be indicted, provided you gave evidence against defendant." On objection the witness was not permitted to answer the question. It is stated that if the witness had been permitted to answer he would have testified that the grand jury had indicted him for selling whisky to Clarence Hanson, on Thanksgiving Day, and that after having been before the grand jury he heard this; that he then went before the grand jury and told the grand jury that his testimony before them was false, and that he then made a trade with the grand jury, by the terms of which no bill was to be returned against him, if he would give testimony against defendant. It is insisted that this testimony was admissible as going to the credit of the witness who had testified for the State. If the bill had shown that Robertson had testified to any material fact against appellant, then it would appear that the action of the court was erroneous. But the bill fails to show this. For ought that appears, he may have testified upon some formal matter, and may not have testified to any facts injurious to appellant.

Appellant craved a new trial, on account of newly discovered evidence of the witnesses John Womack, Duck Bibles, Will Orr and Mrs. I. J. Hanna (his wife). Certainly under the circumstances, the testimony of appellant's wife was not newly discovered. Her testimony is in the nature of an alibi; that is, that he was not at his place of business (the restaurant) when the sale of said whisky should have occurred to prosecutor, but was at home. Appellant presented evidence on this theory, and he certainly knew at the time, the fact that his wife knew whether he was at home during certain portions of said day. Indeed, it occurs to us that the testimony of all said witnesses could have been discovered by the use of reasonable diligence. Furthermore, the testi-

mony appears to have been impeaching of State's witnesses, as well as cumulative, of appellant's theory, that, if prosecutor got any whisky it was from Monroe Robertson, and not from him, and that the transaction was put on him by appellant in pursuance of a conspiracy. We do not think the court erred in refusing a new trial on account of said newly discovered evidence. We have examined the record carefully, and in our opinion, the jury was authorized to render the verdict they did, and we see no reason to disturb their finding. The judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]