## Ex Parte Tom Anderson.

### No. 3637. Decided February 6, 1907.

**1.—Local Option—Presiding Officer—Chairman of Democratic Executive Committee—Office.**

Upon trial for a violation of the local option law, it was shown that the presiding judge in the local option election was at the time chairman of the democratic executive committee. Held, that this was not an office of profit and trust in law, and he was therefore not disqualified.

**2.—Same—Legality of Election—Presiding Judge—Personal Endorsement of Ballots.**

Where upon trial for a violation of the local option law, it was shown that the presiding judge at said election did not personally sign his name on each ballot as required by the Terrell Election Law, but authorized another to sign his name on said ballots for him, and that the election fairly expressed the will of the majority at said election. Held, that said election is valid. Davidson, Presiding Judge, dissenting.

**3.—Same—Special and General Law—Ballot—Directory Provision.**

Where upon trial for a violation of the local option law, it was shown that the ballots were not personally endorsed by the presiding officer of the election as required by the general election law, the local option law with reference to local option elections not requiring such endorsement. Held, that the local option law being a special law controlled the general election law in local option elections; besides such endorsement is only directory and cannot vitiate a fair election for local option.

**4.—Same—Contest of Election—Collateral Attack.**

In the trial of a contested local option election in a court of competent jurisdiction, the action is direct and the court is authorized to go thoroughly into the validity of said election, etc., but where the attack upon an election was collateral, and it was admitted that the election for local option was fair, the question as to the failure of the presiding officer to endorse the ballots as required by the general election law could not be considered.

**5.—Same—Conflict of Decisions—Civil and Criminal Courts—Election Contest.**

See opinion as to seeming conflict in the decisions between the Civil Courts of Appeal and the Court of Criminal Appeals, and the suggestion of amending the statutes with reference to the trial of local option elections which may be contested, while prosecutions are pending thereunder.

From Henderson County.

Original application for habeas corpus for release from a commitment upon complaint for violating the local option law; contesting the validity of the local option election.

The opinion states the case.

*Miller & Royal* and *W. R. Bishop,* for relator.—On question of invalidity of election: Arnold v. Anderson, 93 S. W. Rep., 692; Ex parte Keith, 83 S. W. Rep., 683; Hanna v. State, 87 S. W. Rep., 702; Rev. Stat., art. 3389; McCrary on Election, sec. 226; Rhodes v. Driver, 64 S. W. Rep., 272; State v. Conner, 23 S. W. Rep., 1103; Clark v. Harbison, 14 Texas Ct. Rep., 227; Lipscomb v. Perry, 15 Texas Ct. Rep., 751; Culp v. Riley, 13 Texas Ct. Rep., 1009.

*J. F. Yantis,* Assistant Attorney-General; *Paul Jones, T. P. Faulk, Faulk & Tanner, Jno. A. Mobley,* County Attorney, *A. B. Watkins* and *Gay Greer,* for the State.—Hehl v. Guion, 55 S. W. Rep., 1026; Kellogg v. Hickman, 12 Colo., 256; Parvin v. Wimberg, 30 Am. St. Rep., 262; 25 Am. & Eng. Ency. of Law, 1066; Allen v. Glynn, 17 Colo., 338; Duberry v. Nicholson, 102 N. C., 465; McCrary on Election, 4th ed., sec. 724; Culp v. Riley, 13 Texas Ct. Rep., 1009. When an election has once been held and the vote counted and result declared, a court will not declare it void or set aside the vote of innocent electors fairly and honestly given. Culp v. Riley, supra; Davis v. State, 75 Texas, 424; Fowler v. State, 68 Texas, 34; State v. Phillips, 63 Texas, 393; People v. Wood, 42 N. E. Rep., 536; Stockpole v. Hallahan, 16 Mont., 40.

BROOKS, JUDGE.—Relator was arrested under proper complaint for violating the local option law in justice's precinct number 1 of Henderson County. After said arrest, he sued out a writ of habeas corpus before this court, contesting the validity of said election.

He insists that the local option law is invalid because the presiding judge of the voting precinct number 2 in the local option election, was at the time of the holding of said election an officer of trust under the laws of this State, to wit: was chairman of the democratic executive committee, having been theretofore elected to said office at the primary election held in said county on July 28th. The insistence is that he was thus holding two offices of profit and trust. We do not think there is anything in this contention. To be chairman of the democratic executive committee for the county was not an office of profit and trust within the contemplation of the laws of this State.

He also insists that the law is invalid because J. T. Deen, the presiding officer in voting precinct number 2 of said justice's precinct, did not sign his name on each ballot, but authorized Miller (one of the judges of said election) to sign his (Deen's) name on said ballot. As we understand the record, this was uniformly done in the presence of J. T. Deen, the presiding judge, by said Miller. It is agreed in the statement of facts that if· the ballots upon which the presiding judge Deen authorized his signature to be placed are counted, together with the other ballots cast in said election, the result was properly declared by the commissioners court in favor of prohibition.

Then the question occurs, as to whether or not relator is correct in the proposition that the election is void, because the presiding judge did not sign his name in person upon the ballots. Relator cites Arnold v. Anderson, 93 S. W. Rep., 692, 14 Texas Ct. Rep., 713. Chief Justice Fisher, delivering the opinion for the Court of Civil Appeals, held: (after excluding the ballots that the presiding judge failed to write his name on the back of the ticket the correct result could not be ascertained therefrom) that the election was void because the presiding judge did not sign his name in person on the back of each ballot. This

conclusion was reached by the learned judge, after first holding that the Terrell Election Law applied to local option elections as far as the ballot was concerned, as well as to the manner of holding the election. We held in Ex parte Keith, 83 S. W. Rep., 683, and Hanna v. State, 87 S. W. Rep., 702, that the Terrell Election Law did not apply to the manner of ordering a local option election, nor did it apply to the character of ballot. In the latter case this language was used: "The Constitution required the Legislature at its first session to pass a law whereby the voters of certain territory may by a majority vote determine, from time to time, whether the sale of intoxicating liquor shall be prohibited within the prescribed limits. In pursuance of this authority, the Legislature in passing the local option election law, in article 3388, Revised Statutes, 1895, provides the character of tickets to be used.; and it will be seen that this article does not require that said tickets be headed 'Official Ballot.' Nor does said law require that but one ticket be used, with 'For Prohibition'. and 'Against Prohibition' indorsed on the same ballot or slip of paper. There is nothing suggesting the impropriety of using two ballots or slips of paper, with 'For Prohibition' printed or indorsed on the one, and 'Against Prohibition' indorsed or printed on the other. However, if it should be conceded that the Terrell law applied as to the designation of ballots—that is 'Official Ballots,'—still we take it that this would be merely directory, and not a mandatory regulation. The failure to indorse on any ballot or ballots 'Official Ballot' would not necessarily exclude it, unless in connection therewith some fraud was shown. If it was a fair ballot, properly cast, it would be counted, although it might not have the heading required by the Terrell law—'Official Ballot.' For a discussion of the latitude allowed, and the liberality of courts in counting ballots not in compliance with the law regulating elections, see McCrary on Elections, c. 14, arts. 493–514, inclusive. We accordingly hold that, because the voters used separate ballots—those voting for prohibition using one, and those voting against prohibition using another—and neither of these being indorsed 'Official Ballot,' did not vitiate the election."

It will be seen from an inspection of the local option law that there is nothing in the clause designating the character of ticket to be provided, requiring it to be marked "Official Ballot"; nor is there anything in said article requiring the election officer to indorse his name thereon: but it merely provides that the ballot shall be "for prohibition" or "against prohibition."

We therefore hold that the ticket in local option elections is not under the control, so to speak, of the provisions of the Terrell Election Law. Certainly to omit the word "Official Ballot" from the local option election ticket, would not vitiate the election, as required by the Terrell Election Law: it would be equally true, that it would not vitiate it to omit from the ticket the signature of the presiding officer. We note with care and concern the insistence made by Chief Justice

Fisher to the effect that the endorsement of the name on the ballot is a beneficial provision of the Terrell Election Law, in that it promotes the purity of the ballot and prevents the stuffing of the ballot boxes. This may be true; but in the Keith case, supra, we held, that there was no conflict between the Terrell Election Law and the local option law: one being a general and the other a special law; and to interpolate upon the local option ballot a provision that the same had to contain the indorsement of the presiding judge, would to that extent, repeal by implication a pre-existing special law by a general provision, which we understand cannot be done unless clearly so intended.

Furthermore, if the provisions of the Terrell Election Law, which requires that the name of the presiding judge should be placed upon the ballot, also applied to the local option election, yet, we are constrained to conclude that this would be merely a directory provision and could not and should not vitiate the election. It is the province of the courts, wherein the contest of an election is before them for decision and mere irregularities are insisted upon to defeat the election, that the courts should not as above stated, declare said election invalid, where the result is readily ascertained, and there is no dispute about the fairness of the election. It is conceded in the statement of facts before us, that the election was in all things fair; that all parties who voted were qualified to vote; that no ballots were cast that were not legal ballots; and no one was permitted to vote who was not a legal voter in that precinct. There is no question made in this record but that the election fairly expressed the will of the majority of the people of the precinct, where said election was held. Then we think it would be amiss for us in the first instance, to hold that the Terrell Election Law applied to a local option election; or in the second instance to hold, even if it did, that the sheer fact or failure to place the name of the presiding judge upon the back of the ticket by the presiding officer would vitiate the entire election. Under the Constitution and laws of this State, the voters have rights in the premises that should not be frittered away, defeated or destroyed by laches of the officers, upon matters that do not affect and go to the genuineness, sincerity and honesty of the election. So believing we hold, that the election is in all things valid. The relator is hereby remanded to the custody of the officers, with all costs of this court taxed against him.                    *Relator remanded.*

Davidson, Presiding Judge, dissents.

HENDERSON, JUDGE.—I agree to the result, and may express my views.

ON MOTION FOR REHEARING.

March 22, 1907.

HENDERSON, JUDGE.—This is a proceeding on a habeas corpus before this court, and the relator was remanded, and comes before us

on motion for rehearing. The original opinion states the case substantially. As I merely concurred in the result reached, I will here briefly state my views.

Relator insists that the local option law in justice precinct No. 1 of Henderson County is invalid, because the presiding judge of election precinct No. 2 failed to endorse his name in person on all the ballots voted in said precinct, the endorsement being made at his instance by one of the judges of the election. His contention is that these votes, under the Terrell Election Law, should not be counted, and that there were a sufficient number of votes in said box which were counted improperly, which, if thrown out, would change the result of said election. The question thus presented is whether or not relator is correct in the proposition that the election is absolutely void because the presiding judge did not sign his name in person upon the ballots. To sustain his contention, relator cites us to Arnold v. Anderson, 14 Texas Ct. Rep., 713; Clark v. Hardison, 14 Texas Ct. Rep., 227, and other cases. It has been held that as to local option elections wherever the local option law speaks on the subject, that it furnishes the rule regulating local option elections, and the general election law, commonly known as the Terrell Election Law, only applies where the local option election law is silent and the Terrell Election Law is not inconsistent but harmonizes with the local option election law. See Revised Civil Statutes, article 3389; Acts of the Legislature 1905, sec. 194, of the Terrell Election Law; Hanna v. State, 87 S. W. Rep., 702, and Ex parte Keith, 83 S. W. Rep., 683. It may be conceded that the endorsement of the presiding judge, in accordance with the provisions of the Terrell Law, of his name on the local option election ballots, is not inconsistent with anything in said election law and, therefore, inasmuch as this is one of the safeguards regulating elections, said provision is applicable to local option elections, and that this provision should be read into the local option election law regulating the issuance of ballots, and providing for a personal endorsement thereon by the presiding judge of the election of his name; that is, this is a provision safeguarding the election against frauds, the intention being to see that none but the ballots issued by the election board shall be voted. However, did the failure of the presiding judge to write his name in person on the ballots given out (if it be conceded that this was a personal trust which he could not delegate, which appears to be in accordance with the holding of our Civil Supreme Courts) render the local option election in Henderson County absolutely void? It will be borne in mind that no fraud is charged, no illegal votes were cast, all the voters were qualified, and the election was fair, and counting these votes, the votes not endorsed, local option carried in that precinct by a considerable majority. Now, while it is true the law says these ballots shall not be counted, they have been counted, and the result declared, and local option put into effect by publication. Can we hold that because one of the safeguards guaran-

teeing a fair election was disregarded, that said election was conse-
quently null and void? We think not, and if the cases cited by re-
lator from our Civil Supreme Court are intended to enunciate this doc-
trine, notwithstanding the very high respect which we entertain for
their opinions, we cannot bring ourselves to agree with them. But we
do not believe that the cases cited go to the extent insisted upon by
relator; and this brings in review another proposition. In Arnold
v. Anderson, supra, and other cases cited, there was a direct pro-
ceeding to contest the local option election brought before the district
court which, as we understand, has exclusive jurisdiction of a con-
tested local option election under our law. See art. 3397, Rev. Civ.
Code. In such a contest that court has jurisdiction to inquire into
the fairness of local option elections, and to determine as to the con-
duct of said elections and what occurs on the day of the election
only. See Norman v. Thompson, 6 Texas Ct. Rep., 641; 72 S. W.
Rep., 62. This last case is an opinion of the Supreme Court of this
State, which holds in a contested election case before the district courts
they are authorized to take cognizance of what occurs on the day of
the election only, and of course this would include the endorsement
by the presiding judge of the ballots distributed to the voters. In the
trial of a contested local option election, the action is direct and
the court is authorized to go into the box and thoroughly investigate the
fraudulency of the election and to determine the question as to the
validity of said election, and in case it finds the election was car-
ried on in such a fraudulent manner as to render same void, that
court can authorize a new election.

Here, however, we have a habeas corpus proceeding which does not
involve a direct but a collateral attack on the election, and we are only
authorized to act when the local option election for some cause is
absolutely void. As this question comes before us, it is admitted that
the election was fair and that prohibition carried in the precinct,
counting the votes which were not personally endorsed by the pre-
siding judge of the election. Now, can we hold that this failure to
endorse the ballots rendered said election absolutely void? To so hold
would be equivalent to saying that notwithstanding the election was
fair, it was rendered void simply because one of the safeguards se-
curing the fairness of the election was not observed. This is not the
law, and to so hold would violate all the rules regulating elections,
and which are intended merely to guarantee the will of the people as
expressed in a fair ballot. It may be, in thus holding, there is a con-
flict between our views and those of the Courts of Civil Appeals on
this subject. If such be the case, relator may be placed in a peculiar
predicament. The civil courts may hold that there was no election
and order a new one, while by our holding the law is in force and he
is held amenable to the law.

In this connection we do not believe it amiss to suggest to the
Legislature that it would be advisable to further amend our statutes

with reference to the trial of local option elections which may be contested; and require other courts to take cognizance of such contest, and the result thereof, and to suspend prosecutions during such contest.

*Overruled.*

DAVIDSON, Presiding Judge (dissenting).—I feel called upon to dissent from my brethren in their disposition of this case. The agreed state of facts show that there. was a local option election held in precinct No. 1, Henderson County; that one of the boxes gave nineteen anti majority and the other gave thirty-six pro majority; that the pro majority occurred in election precinct No. 2, the anti majority being in election precinct No. 1. J. T. Deen was the presiding officer of the election held in precinct No. 2, Steve Miller being one of the judges. Miller's evidence shows that Mr. Deen authorized him to endorse his (Deen's) name on all the election ballots handed out to the voters on the day of the election. This is uncontroverted. Under this state of case a writ of habeas corpus was refused by the county judge, and with the case in this condition it was presented to this court, the writ granted, and the case set down for argument. When the case was called, a motion to dismiss the case from the docket was made by the prosecution or respondent. If my brethren had sustained this motion I should not feel called upon to file this dissent, and in fact I should have assented to the disposition of the case.

The local option law provides that after an election has been held, within thirty days after result has been declared any citizen living within the territory, has a right to contest said election. The section with reference to contest of local option election has been construed by our Supreme Court in Norman v. Thompson, 6 Texas Ct. Rep., 641. Under that opinion such contests can alone be predicated upon matters occurring during the day of the election, as to the manner of holding it, etc. That statute has no reference to antecedent matters as to the matter of calling the local option election, posting notices, etc. It was also agreed in this case that there was a contest pending under the statute at the time of the granting of the writ of habeas corpus. If the decision of the Supreme Court is correct, and if the terms of the statute mean anything, then a contest can be carried on only in the district court, in a civil proceeding, so far as the matters occuring on the day of the election are concerned, and under the terms of our statutes, articles 1797 and 3397 of the Revised Statutes, the district court alone has jurisdiction to try contested elections of this character. Such contests cannot, therefore, be tried under a writ of habeas corpus. Prior to the amendment of article 5 of the Constitution, occurring in 1891, there was no court in this State having jurisdiction of such contests. To supply this defect the Constitution was amended by a vote of the people in 1891, and from that time these contests find jurisdiction only in the district court. If I understand the laws of Texas correctly, there has never been a time in the

history of this State when the Court of Criminal Appeals could try contested elections; that is, as to matters occurring on the day of the election in local option or any other character of contested elections; nor has it been the law in this State, as I understand it, that under the writ of habeas corpus such contests could be tried. If my brethren had taken this view of it, and sustained the motion to dismiss the writ for want of jurisdiction in this court, I should have assented, but they did not, however, follow this course, but maintained jurisdiction and tried the contest upon its merits, and held the election valid. As I view it, the decision is without authority of law, and, of course, not binding. I, therefore, dissent from their conclusion; first, because this court had no jurisdiction to try this contest; and, second, if the court had such jurisdiction, I would enter my dissent to the conclusion reached holding the election valid.

I understand the legal proposition to be sound, and sustained by all the authorities coming under my observation, that where an officer is charged with a duty pertaining to him as such officer only, and without conferred authority authorizing him to delegate that authority to a clerk or an assistant, that the duties devolving upon him can only be done by himself in person; that it is beyond his power to either authorize some other person to do the act confided to and incumbent upon him, or to ratify the act of another when done in the premises. This question has repeatedly been before the Supreme Court of this State, and was before this court at its Austin sitting in 1906. See Chenowith v. State, 16 Texas Ct. Rep., 695, for collated authorities. Therefore, I will say, in regard to this, that Mr. Deen, the presiding officer, was without authority to authorize Mr. Miller, one of the judges, to endorse his name upon the election tickets, as was done under the facts of this case. This view of the question is supported by an unbroken line of authorities in this State as well as in other States where the question has arisen. See Arnold v. Anderson, 14 Texas Ct. Rep., 713; Clark v. Hardison, 14 Texas Ct. Rep., 227; Brigance v. Harlock, 17 Texas Ct. Rep., 62; State v. Connor, 86 Texas, 133; Rhodes v. Driver, 64 S. W. Rep., 272; Robinson v. Wingate, 80 S. W. Rep., 1067; Lipscomb v. Perry, 15 Texas Ct. Rep., 751, and Kirkpatrick v. Deegans, 53 W. Va., 275. These authorities are conclusive, it occurs to me, of the question that the presiding officer has no authority to delegate his duty to write his name upon the ballots to another to do that duty or perform that office. For the reasonings in support of this proposition I refer to these authorities without repeating the reasonings upon which they are predicated. Nor does this interfere with the doctrine laid down in Ex parte Keith, 83 S. W. Rep., 683, and Hanna v. State, 87 S. W. Rep., 702, that the provisions of the local option law, in regard to holding elections to put that law in force, are superior to the provisions of the Terrell Election Law if in conflict. I have agreed, and do now assent to the doctrine laid down in the Hanna and Keith cases, supra, as being correct.

We have also held that in regard to local option election ballots, it was not necessary to write upon them "official ballot," the local option election law having provided that they shall have written on them "for prohibition" and "against prohibition." There seems to be a sufficient conflict between the local option election law and the Terrell Election Law in regard to the heading of the ticket for us to maintain the proposition that in that respect the local option law controls instead of the terms of the Terrell Election Law. I have also agreed to those decisions holding that notices of the election in local option elections shall be in accordance with the terms of the local option law, and shall be posted under its terms instead of published in a paper as provided for special elections under terms of the Terrell Election Law. But here the real or apparent antagonism between the two laws· ceases, and local option laws do not provide on the face of them how the election shall be carried on, on the day of the election, but do provide that such election shall be carried on under the terms of the general law as to the manner of receiving and counting the ballots, making returns, etc. It is, therefore, a self-evident proposition, under these statements, that the terms and requirements of the Terrell Election Law controls the manner of holding the election, counting ballots, and making returns, etc. Norman v. Thompson, supra. In these matters of contested elections, in regard to matters occurring on the day of election, the Terrell Election Law controls. Such I understand to be the unquestioned law.

I am further of the opinion that as these contests are civil proceedings, that this court should or would conform to the decisions of the Courts of Civil Appeals, and the Supreme Court, where they have pasesd upon and decided these questions, even if this court has jurisdiction to review matters occurring on the day of the election. I am also of the opinion that in those matters provided under article 3397 of the Revised Statutes, that the decisions of the courts having jurisdiction and authority to pass upon those questions, would or ought to be, in a general way, binding upon this court. We have gone beyond our jurisdiction and authority, as I view this case, in as far as a majority opinion can go, in overturning the well settled law of the State enunciated by courts having jurisdiction to settle the questions involved, and have assumed jurisdiction of matters not within our jurisdiction in order to reach that conclusion.

I do not propose to discuss the fairness or the unfairness of the election. Our Courts of Civil Appeals have held, in well matured opinions, that where the name of the presiding judge has been written upon the ballots to be cast by the electors by another than himself, even under his authority and command or request, they shall not be counted; that the votes thus cast are illegal, and they have further held that the provisions of the Terrell Election Law requiring said presiding judge in person to write his name on the ballots is mandatory, and all votes cast with his name written upon them by some person other than himself are illegal, and shall not be counted in counting out the votes, and making returns,

etc. The illegality of these votes do not necessarily render the election void, nor has it been so held, as I understand the opinions. These decisions have held, however, that if a sufficient number of these illegal votes have been cast, which being rejected, would change the result, that under article 3397 the court will issue an order to call another local option election, but it has not held that where these illegal votes do not amount to a sufficient number to change the result, that the election would be void or that it should be set aside. It is only where a sufficient number of such illegal votes have been cast, which being disregarded can change the result of the election, that the election should be set aside.

For the reasons indicated, without going more elaborately into the question, I express the above why the opinion in this case was erroneous, and from which I, with the utmost deference to the opinion of my brethren, most respectfully enter my dissent.

[This case was omitted under Dallas Term 1907, and is therefore reported here.—Reporter.]