## VADEN v. COLLIER. (No. 10299.)

(Court of Civil Appeals of Texas. Fort Worth. June 2, 1923.)

**I. Fraudulent conveyances ⬤⇒298(1) — Conveyance by father to son held not in fraud of creditor.**

Deed to land from father to son, more than one month prior to date of judgment lien thereon, *held*, on the evidence, not to have been intended to defeat judgment creditor in the collection of his debt.

**2. Homestead ⬤⇒60—Includes idea of house for residence, either constructed or contemplated, accompanied by acts of preparation.**

The term "homestead" necessarily includes the idea of a house for residence, either constructed or in contemplation of construction, accompanied by acts of preparation therefor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Homestead.]

**3. Homestead ⬤⇒55—Preparation to fix property as home, accompanied by intention, fixes a homestead from that time.**

Preparations to improve property for use as a home, accompanied by an intention to make it a homestead, fixes a homestead right in it from that time.

**4. Homestead ⬤⇒32—Mere intention to occupy property at future time not sufficient to make it homestead.**

Mere intention to occupy property as a home at some future time, unaccompanied by

preparations so to use it, is not sufficient to make it a homestead.

**5. Homestead ⬥⟿70—Rural homestead may consist of separate tracts.**

A rural homestead may consist of separate tracts of land, if they do not include more than 200 acres, provided one tract is used as a family residence, and the others for purpose of supporting the family, but title to the separate tracts so constituting parts of the homestead, or some interest therein, must be in some member of the family—citing Const. art. 16, § 51.

**6. Homestead ⬥⟿32 — Land unoccupied by claimant held not exempt from judgment lien.**

Where land, not occupied by a homestead claimant, was inclosed by a fence and in actual use by claimant to support himself and family, while they occupied a residence on an adjoining tract, belonging to claimant's son, in the absence of preparations or intention to build a residence on the land and thereafter occupy it as a homestead, such unoccupied land was not impressed with a homestead, so as to exempt it from judgment lien.

Appeal from District Court, Jack County; F. O. McKinsey, Judge.

Action by A. J. Collier against J. F. Vaden. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Wantland, Dickey & Glasgow and Stine & Stine, all of Henrietta, for appellant.

J. P. Simpson and H. C. McClure, both of Jacksboro, for appellee.

DUNKLIN, J. J. F. Vaden has appealed from a judgment perpetually enjoining the enforcement of a judgment lien held by him as against 160 acres of land owned by A. J. Collier, who was plaintiff in the trial court, and the only controverted issue was whether or not the land was exempt from the lien on the plea urged by the plaintiff that it was his homestead. The case was tried before the court without a jury, and the findings of fact and conclusions of law filed by the trial judge appeared in the record.

As shown by the findings of fact by the trial judge, the defendant Vaden recovered a judgment against plaintiff Collier and another person on April 1, 1918, for $430, an abstract of which judgment was duly filed for record with the clerk of the county court of Clay county, in which county the land in controversy was located, on April 3, 1918. A writ of execution, which was issued on that judgment, was levied on the land on October 28, 1921. In the year 1905, Collier purchased the east half of section 4, awarded by the state under a certificate issued to Beaty, Seal & Forwood. On February 25, 1918, more than one month prior to the date Vaden's judgment lien was filed, Collier, joined by his wife, conveyed to their son, W. W. Collier, the southeast quarter of said section, being the south half of the 320 acres then owned by him. That deed was executed in good faith and for a valuable consideration. After that conveyance was made, W. W. Collier enlisted in the World War, but before leaving home he gave his father power of attorney to sell the 160 acres so conveyed to him, and later, under and by virtue of that power of attorney, his father did sell that tract at the same time he sold the 160 acres which was owned by him, and on which he resided with his family as a homestead.

After that sale, the father, together with his family, moved to Arkansas and established a home in that state, where he was afterwards joined by his son, W. W. Collier. The sale of the two tracts of land, which was to a man by the name of Adams, was partly for a deferred payment. On February 26, 1921, plaintiff A. J. Collier and his son, W. W. Collier, repurchased both tracts of land from Adams. But plaintiff A. J. Collier took the southeast quarter of the section, and W. W. Collier took the northeast quarter. The consideration for each of those conveyances was a vendor's lien note in Adams' favor for $500, signed by the respective purchasers and the cancellation of the unpaid obligation which Adams had given in part consideration for both tracts. On the northeast quarter of the section there was a dwelling house and after the purchase of the two tracts above stated, plaintiff A. J. Collier and wife and an unmarried daughter, and their son, W. W. Collier, moved into that house, where they have lived ever since. Prior to the sale of the southeast quarter to his son, W. W. Collier, plaintiff had resided in the same dwelling, claiming it as his homestead, and so resided at the time he moved to Arkansas.

Another finding of fact by the trial judge reads as follows:

"I find that plaintiff repurchased the 160 acres, the southeast quarter section for the purpose of making same his home and homestead; that same is all under fence, part of it in cultivation and the rest pasture land, and the plaintiff has resided with his wife and unmarried daughter and son on the northeast quarter section by permission of his son and as the head of the family, and has used the 160 acres belonging to him and the proceeds therefrom in connection with and for the purpose of maintaining his home and residence on said northeast quarter, said plaintiff owning no other land, and his southeast quarter having residence on it."

In this connection, we will say that it is apparent from the record that there was omitted from the closing portion of the sentence just quoted the word "no" between the words "having" and "residence." In other words, it appears from the record that the trial judge intended to find that the southeast quarter of the section had no residence on it.

[1] The chief controversy in the trial court was whether or not the conveyance from the father to the son was made for the purpose of defeating Vaden in the collection of a debt which afterwards ripened into the judgment later awarded, and all assignments of error presented here relate to that issue. Several of those assignments are addressed to the admission of the testimony of different neighbors of the plaintiff Collier, tending to show that there was an understanding between plaintiff and his son, who was the last of 11 children to remain with him after reaching majority, that the father would deed to the son the southeast quarter section of the land in consideration for the services of the son in assisting his father in support of his family. Plaintiff and his wife, and also his son, all testified positively that such was the express agreement between the father and son, and in consideration of such agreement the son rendered services for several years in aiding his father to support the family, and the deed to the son was made in consummation of that agreement. No testimony was introduced expressly controverting that testimony, and even though it could be said, which we do not feel inclined to hold, that the testimony complained of and referred to above was improperly admitted, such error would not be a sufficient ground for a reversal of the judgment, the trial being before the court without a jury. Furthermore, the defendant Vaden did not in his pleadings allege that the sale by the father to the son was made for the purpose of defrauding his creditors.

All the findings of fact made by the trial judge are amply supported by the evidence, and the same are accordingly approved. From those findings it follows that the judgment lien did not attach to the southeast quarter of the section, which is the land in controversy, prior to the purchase of the same from Adams by A. J. Collier after he returned from the state of Arkansas and took up his residence in his former home on the northeast quarter of the section. But we are of the opinion that the facts found by the trial court do not warrant the conclusion, in effect, that the defendant's judgment lien did not attach to the land in controversy immediately upon the purchase of the same by plaintiff from Adams. While, as shown by the court's findings of fact, the tract in controversy is under fence, part of it being in cultivation and the rest pasture land, and that the plaintiff has used the same and the proceeds arising therefrom for the support of himself and family, and for the purpose of maintaining his home and residence on the northeast quarter of the section, and that he owns no other land, yet there was no finding of any intention on the part of the plaintiff to establish a residence for himself and family on the southeast quarter section.

[2] The term "homestead" necessarily includes the idea of a house for residence, either constructed already or in contemplation of construction, accompanied by acts of preparation therefor. Franklin v. Coffee, 18 Tex. 417, 70 Am. Dec. 292; Philleo v. Smalley, 23 Tex. 503; Barnes v. White, 53 Tex. 628; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832.

[3] Preparations to improve property for use as a home, accompanied by an intention to make it a homestead, fixes a homestead right in it from that time. O'Brien v. Woeltz, 94 Tex. 153, 58 S. W. 945, 59 S. W. 535, 86 Am. St. Rep. 829; West End Town Co. v. Grigg, 93 Tex. 451, 56 S. W. 49; Parker v. Cook, 57 Tex. Civ. App. 234, 122 S. W. 419.

[4] Mere intention to occupy property as a home at some future time, unaccompanied by preparations so to use it, is not sufficient to make it a homestead. West End Co. v. Grigg, 93 Tex. 451, 56 S. W. 49; Summerville v. King, 98 Tex. 340, 83 S. W. 683.

[5] A rural homestead may consist of separate tracts of land, if they do not include more than 200 acres, provided one tract is used as a place of residence for the family and the others are used for the purpose of supporting the family. Texas Constitution, art. 16, sec. 51; Woolfolk v. Ricketts, 48 Tex. 28; House v. Phelan, 83 Tex. 597, 19 S. W. 140; Houston Ry. Co. v. Winters, 44 Tex. 597. But title to the separate tracts so constituting parts of the homestead, or some interest therein, must be vested in some member of the family. That this is true is manifest from the provision of the Constitution and statutes prescribing the method by which the husband and wife may convey the homestead which is exempted from sale, or may fix a mechanic's lien thereon, and from the further fact that the exemption applies to the homestead as a whole and provisions exempting such property from forced sale evidently do not apply to property not owned by the person claiming the exemption.

[6] But we know of no decision which would sustain plaintiff's claim that Vaden's judgment lien never attached to the land in controversy after plaintiff purchased the same from Adams, merely because the same was inclosed and in actual use by plaintiff for the purpose of supporting himself and family, while he with his family was occupying a residence on the adjoining tract, which adjacent tract and residence belonged to his son, in the absence of any preparations or intention to build a residence on the land in controversy, and to thereafter occupy it as a home for himself and family. And for the lack of any finding of such preparations and intention on the part of plaintiff, and also for the lack of proof of such facts, so far as we have found in the record, the judgment of the trial court is reversed, and the cause is remanded.