**In re Arthur and Patricia MITCHELL, Debtors.**

**Bankruptcy No. 90–13245.**

United States Bankruptcy Court, W.D. Texas, Austin Division.

Oct. 8, 1991.

Patrick C. Hargadon, Martinec, Hargadon & Wise, P.C., Austin, Tex., for debtors Mitchell.

Yerger Hill, III, Smithville, Tex., Eric Taube, Austin, Tex., for Creditor First State Bank of Smithville.

## MEMORANDUM OPINION ON OBJECTIONS TO HOMESTEAD

LARRY E. KELLY, Chief Judge.

This matter is before the court to consider objections to the rural homestead exemption claimed by the Debtors Arthur and Patricia Mitchell. The objections were filed by FSB, Allen McMurray, and the Chapter 7 trustee. The Debtors objected to the claim of Mr. McMurray and the Chapter 7 trustee as being untimely and they have not been pursued. First State Bank–Smithville ("FSB") did appear, however, to pursue it objection which was timely. This case was filed on or about October 5, 1990 as a voluntary Chapter 7. The Debtor filed amended bankruptcy schedules on October 29, 1990 with a list of claimed exemptions, including a 104 acre tract out of the J.W. Bangs survey in Bastrop County, Texas (hereafter referred to as the "subject property"). The Debtors' exemptions were claimed pursuant to 11 U.S.C. § 522(b)(2) and Texas Property Code § 41.001 et seq. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

## ISSUE PRESENTED

The issue in this case is whether or not the 104 acres owned by the Debtors qualifies for the rural homestead exemption. FSB argues that the property does not qualify because it is not rural in character and because it is not used to provide support for the Debtors. This court is familiar with several opinions of our respected colleagues to the general effect that a rural homestead may not be established unless Debtor can show a dual use—use as a residence *and* as support for the family.[1] This court has made a thorough review of case law in Texas and respectfully disagrees with these opinions to the extent they might be interpreted to require economic support as a required "use." Economic support is certainly one allowable use for a rural homestead, but other uses are also permitted and sufficient to establish a Debtor's rural homestead claim. This property is rural in character, but it provides no real economic support to the Debtors. Its other uses, however, qualify it as a rural homestead.

## FINDINGS OF FACT

1. The Debtor is an attorney and has been licensed since 1950. He has also pre-

---

1. See, *In re Spencer,* 109 B.R. 715, 717 (Bankr. W.D.Tex.1989), "To constitute a rural homestead the land must be used for a residence *and the balance of the tract for the support of the family.*" (emphasis added). Also *In Re Moellendorf,* No. 88–51896–C, 1989 WL 16034, 1989 Bankr.

LEXIS 265 (W.D.Tex. Jan. 16, 1989) (opinions of Judge Leif Clark); also *In re Harrison,* Case No. 390–34092 (Bankr.N.D.Tex., 1990); and *In re Rivera,* Case No. 390–35358 (Bankr.N.D.Tex., 1990) (opinions of Chief Bankruptcy Judge Robert C. McGuire).

viously engaged in ranching activities, real estate investments and the operation of nursing homes and other health care facilities.

2. The subject property is located on Farm to Market Road 969 ("FM 969") near Bastrop, Texas. The Debtor's residence is located on the subject property. The residence is a nice brick home, slightly over 2000 square feet in area with a swimming pool in the back. The Debtor's law office with library and reception area is located in the home.

3. The Debtor accumulated this land in several transactions. The first tract was acquired in the late 1960's. The last tract was acquired in or about 1980 for the purpose of constructing his current residence. He and his wife have lived on this property as their primary residence since their house was built in or about 1980.

4. Two tracts, consisting of approximately 10.31 acres and 12.58 acres, were previously sold by the Debtor, leaving the 104 acres currently claimed. This property is located on the east side of FM 969 between Highway 71 and the Colorado River.

5. The Debtor had his property surveyed for a soil and water conservation plan in 1969. That plan provided that 67 acres would be in pasture, 13 acres would be held as a conservation unit and for hay, and 19 acres would provide a wildlife habitat along the river.

6. The conservation plan was later amended to allow for the raising of cattle. The Debtor did raise approximately 20 head of cattle on an annual basis for 10 years prior to bankruptcy. All of the Debtor's cattle, however, were sold in the year prior to the filing of this bankruptcy case.

7. Improvements on the property include a chicken house, fencing and sheds for goats, five-strand barbed wire perimeter fencing sufficient to hold cattle, cross fencing for the purpose of raising hay, loading pens, a barn, a water trough, a squeeze chute, and tanks for watering cattle. The Debtor, however, has not raised chickens or goats for some period of time prior to the filing of the bankruptcy. The Debtor had also separately fenced an area for a garden and had placed equipment sufficient to irrigate it, drawing water from the nearby river. The garden has likewise not been utilized for approximately two years prior to the filing of the bankruptcy.

8. The subject property has been claimed as a homestead on Debtors' tax designation since 1974.

9. Over the years, the Debtor has cultivated, cut, bailed and sold hay from this property.

10. Utilities to the property include a septic tank for sewage, wells for drinking water, and electricity provided by the Bluebonnet Cooperative, which also provides some electrical services to areas within the city limits of Bastrop Texas. Police protection is provided by the county sheriff's department and fire protection is provided by a volunteer fire department located in Bastrop, Texas.

11. This property is not subject to city taxes, mail is delivered via Star Route 8, FM 969, and there are no sidewalks, curbs or gutters along FM 969.

12. No part of the Debtors' land has been developed or subdivided for future development nor has the debtor expressed any intention to subdivide or develop the property. The property is located within the extraterritorial jurisdiction of the town of Bastrop, Texas.

13. From the Debtor's gate at FM 969, it is approximately ¼ mile to of his house. It is also about one mile in the other direction to State Highway 71. Also from his front gate, it is approximately 3.6 miles by FM 969 and State Highway 71 to the city limits of Bastrop, Texas.

14. Once on State Highway 71 headed towards the city of Bastrop, one encounters a number of commercial businesses including a small office park, furniture store, grocery store, mobile home park, gas station, Ford dealership and McDonalds fast food restaurant. From Debtor's front gate it is approximately 1.8 miles by road to where these businesses begin to be encountered.

15. The Debtor's principal occupation for all times relevant to this case, including immediately prior to and at the time of the filing of the bankruptcy, has been the practice of law. His tax return for a number of years were introduced into evidence and reflect "attorney" as his principal occupation. He has reported financial losses from ranching operations for all years relevant to this hearing.

16. Mr. Mitchell is 65 years of age and has been married to his current wife for approximately 15 years. She is not employed outside of the home. The Debtors have a daughter who is currently in college.

17. The court viewed Debtor's Exhibit No. 10 which was a video tape of the subject property. This was an extensive video tape covering all portions of the property, and the property clearly is rural in appearance. Land immediately across the river from the Debtor is substantially forested and has no development.

18. All of the properties on both sides of FM 969 between the Debtor's property and State Highway 71 are residential, most with several acres of land.

## DISCUSSION

■ The evidence presented at trial and set out in the foregoing findings of fact lead this court to the conclusion that the property at issue is properly characterized as rural. The next inquiry then becomes whether this rural property has been impressed with homestead character, by the acts or intent of the Debtors. The major point stressed by FSB in its objection to the Debtors' homestead claim is that this property is not used to "support" the Debtors. They infer that such "support" must be economic in nature. Presumably, if a "support" test were used, courts who address this issue would have to determine what percentage of support must be derived from the homestead land to qualify it when a case involves two income families or if the homestead is lost in years where no net income is realized. This court rejects any analysis which mandates economic support as a required test for eligibility in claiming rural homesteads. Texas law only requires that a homestead claimant have a possessory interest in the land, demonstrate the intent to claim it as homestead, and use it for some purpose of a home. Economic support is one permissible use. However, use of the land for shelter and protection, comfort, convenience, and enjoyment of the home are also permissible uses. A review of Texas case law amply demonstrates this point.

## A. GENERAL RULES

■ The general rules are not in dispute. When Debtors use state law to claim exemptions, the bankruptcy court must turn to state law to interpret their exemption rights and homesteads. *Butner v. United States,* 440 U.S. 48, 50, 99 S.Ct. 914, 915, 59 L.Ed.2d 136 (1979); *In re Barnhart,* 47 B.R. 277 (Bankr.N.D.Tex.1985). Homestead laws are favored and will be liberally construed to protect homestead. *Whiteman v. Burkey,* 115 Tex. 400, 282 S.W. 788 (1926), answer to certified question conformed to 286 S.W. 350. A liberal construction must be given to effectuate the purpose of the Constitution to protect the homestead rights of families. *Connelly v. Johnson,* 259 S.W. 634 (Tex.Civ.App.1924); *Long Bell Lumber Co. v. Miller,* 240 S.W.2d 405 (Tex.Civ.App.—Amarillo 1951).

The starting point in any such construction is with current constitutional and statutory authority.

Article XVI, § 51 of the Texas Constitution provides:

The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots amounting to not more than one acre of land, together with any improvements on the land; *provided, that the same shall be used for the purposes of a home,* or as a place to exercise the calling or business of the homestead claimant, whether a single adult person, or the head of a family; provided also, that any temporary renting of the homestead shall not

change the character of the same, when no other homestead has been acquired. (emphasis provided).

VTCA, Property Code § 41.002 provides:

(a) If used for the *purposes of an urban home* or as a place to exercise a calling or business in the same urban area, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than one acre of land which may be in one or more lots, together with any improvements thereon.

(b) If used for the *purposes of a rural home*, the homestead shall consist of:

(1) for a family not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or

(2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be one or more parcels, with the improvements thereon.

(c) A homestead is considered to be rural if, at the time the designation is made, the property is not served by municipal utilities and fire and police protection.

(d) The definition of a homestead as provided in this section applies to all homesteads in this state whenever created. (emphasis added)

■ Certain fundamental principles apply to all claims of homestead:

(a) In order to claim a homestead, a possessory interest or present right of occupancy must be owned by the claimant; *Greenawalt v. Cunningham,* 107 S.W.2d 1099 (Tex.Civ.App.1937);

(b) There can only be one homestead, *Bray v. Aiken,* 60 Tex. 683, (1884);

(c) One cannot have both a rural and an urban homestead, *Iken v. Olenick,* 42 Tex. 195 (1875); and

(d) A homestead may be within the corporate limits of a city or a town and still retain its rural character or may be outside the limits of a city or town and have urban characteristics. *Wilder v. McConnell,* 91 Tex. 600, 45 S.W. 145 (1898).

## B. HOMESTEAD INTENT AND USE

■ Mere ownership or possessory interest is not of itself sufficient to establish a homestead. The homestead claimant must also prove intent to claim the estate as a homestead and must demonstrate a homestead use. See generally, Tex.Jur.3rd, Homestead § 61 et seq; *Sims v. Beeson,* 545 S.W.2d 262 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *Fort v. Powell,* 59 Tex. 321 (1883); *Lone Star Brewing Co. v. Felder,* 31 S.W. 524 (Tex.Civ.App.1895) (the *use* of property as a home *must coexist with the intention* that it shall be a home to invest it with the homestead character). (emphasis added) See also, *Houston & G.N.R.R. Co. v. Winter,* 44 Tex. 597 (1876); *Milmo National Bank v. Hirsch,* 54 S.W. 781 (Tex.Civ.App.1899); *Steves v. Smith,* 49 Tex.Civ.App. 126, 107 S.W. 141 (1908, writ ref'd).

■ Where actual occupancy is not present, case law indicates that there must not only be proof of intent by the claimant to occupy and use the premises for homestead purposes, but such intent must be coupled with some overt act of preparation evidencing that intent. *Surratt v. Thomas,* 233 S.W.2d 350 (Tex.Civ.App.—Beaumont 1950); *Davis v. McClurkan,* 378 S.W.2d 358 (Tex.Civ.App.—Eastland 1964). This "overt acts" test is used not only when a tract is vacant, but also where a claimant owns more than one tract and the tracts are not contiguous. See, *Brooks v. Chatham,* 57 Tex. 31 (1882) (Intent, in itself, will not impress the homestead character upon property, but such intent must be accompanied with a preparation demonstrating such intent.)

See also *Autry v. Reasor,* 102 Tex. 123, 126, 108 S.W. 1162, 1164 (1908), *rehearing* 102 Tex. 127, 113 S.W. 748.

There must be something more than mere intention. There must be some act done which will evince an intention to use it as a home, *or, if separated from the tract upon which the home of the family stands, to use it in some way, in connection with a home place, for the comfort, convenience, or support of the*

*family, or as a place of business for the head of the family.* (emphasis added).

## C. PERMISSIBLE USES

 Through their training, attorneys learn to observe amendments to the wording of statutes. This allows them to distinguish language in one case from a case later or earlier in time. It is not so easy to keep track of changing living conditions over time and it becomes ever more difficult, as time distances current homestead issues from the actual historical factual setting which existed when the same or similar issues were decided in earlier precedent setting cases. This time-distance factor is an impediment to our understanding of what "uses" are permissible to impress homestead character on rural land.

In *In re Spencer,* at 717, the bankruptcy court in 1989 stated that:

"To constitute a rural homestead, the land must be used for a residence and the balance of the tract *for the support of the family.*" citing *Ratliff v. Smith,* 178 S.W.2d 138, 140 (Tex.Civ.App.—El Paso 1943, writ ref'd): *Vaden v. Collier,* 253 S.W. 889 (Tex.Civ.App.—Ft. Worth 1923, no writ). (emphasis added)

The *Spencer* opinion then stated that the property was "... used primarily as a residence and *not for the maintenance or support of the family.*" Elsewhere, however, the court observed that:

If these tracts were located nowhere near a developed city and did not themselves have the incidents of a city, they would in all likelihood enjoy a characterization as rural property if for no other reason than that they could not be classified as urban property.

Citing *Posey v. Bass,* 77 Tex 512, 514, 14 S.W. 156, 157 (1890) ("place of homestead gives character, ... if it be in the country, it is rural homestead").

If *Spencer* is interpreted to mean that a claimant holding a possessory interest, showing the requisite intent, and demonstrating an actual use of the property for his or her home cannot prevail in impressing homestead character on rural property unless they also demonstrate some form of

economic use, this court disagrees. All that the constitution and case law have ever required is that the property be used for some one purpose of a home. *"One of the purposes* of a rural homestead is to support the family therefrom." *Autry v. Reasor,* 102 Tex. 123, 126, 108 S.W. 1162, 1164, 113 S.W. 748 (1908) (emphasis added).

In the early years of our state's history, it is reasonably inferable that one could not maintain life itself in a rural environment without food, shelter, transportation, and crops or other items to barter for necessities. Courts, in earlier historical contexts, necessarily made various findings of facts in their rulings involving homestead issues. It is not surprising that they found that early rural residents had horses for transportation, cows for milk, cattle or other animals for food, nor that these early residents generally earned their living from traditional farming and ranching activities. It does not appear from case precedent, however, that any effort was made to impress a "business" or "occupational" test before these early claimants could prevail in claiming a rural homestead. The courts, in their findings, were merely stating what would be reasonably obvious if one was living in the country and using the property as their home at that historical point in time.

## D. CASE LAW

An important early decision is *Franklin v. Coffee,* 18 Tex. 417 (1857). The Texas Supreme Court therein grappled with the definition of homestead. The underlying facts were simple. Mr. Franklin was the owner of a rural tract of land a few miles from the town of LaGrange, Texas. He had never resided on the property. Although it once had a small cabin and fence for one or two seasons, these improvements no longer existed. No evidence was introduced to show that those improvements were made by or for Franklin's benefit. The land was sold at Sheriff's sale and Franklin sought to set the sale aside, claiming the property as his homestead. The Supreme Court made the following comments:

In *Wood v. Wheeler* it has been well said that, "the object of the constitutional exemption, was to confer on the beneficiary *a home* as an asylum—a refuge which cannot be invaded, nor its tranquility or serenity disturbed."

The policy of the law is to secure an asylum free from the assaults of creditors; *a home for the shelter and protection of the family* ...

The phraseology of the provision of the Constitution under review, forbids the interpretation that a mansion house was intended by the word homestead. It is an acknowledged rule in the interpretation of language, that the definition, if substituted for the word defined, will make good sense. The term, and its definition, will be convertible. To test the word homestead by this rule we would have, 'The mansion house of a family not to exceed two hundred acres of land & ...' shall not be subject to forced sale. This would make nonsense.

Blackstone says that, "the most universal and effectual way of discovering the true meaning of a law where the words are dubious, is, by considering the reason and spirit of it, or the cause which moved the legislator to enact it." (Blk 1, Vol. 61).

What is a homestead?

"1st. *The place of a mansion house; the inclosure, or ground immediately connected with the mansion.* 2d. native seat; *original place of residence*" (Webster's Unabridged Dictionary). "It is a mansion house" (2 Tom.Dic. p. 96, title Homestead or Homestall.) Bouvier gives a more comprehensive definition of this legal term: he says, a homestead is *"the place of the house or home place."* Homestead farm does not necessarily include all the parcels of land owned by the grantor, though lying and occupied together. This depends upon the intention of the parties when the term is mentioned in a deed and is to be gathered from the context. (1 Bouv.Law Dic. p. 588, title "Homestead;" ...).

That it is the *protection of the family in their home,* which the Constitution secures, see *Sampson & Keene v. Wil-* *liamson and wife,* 6 Tex.R. 102; *Wood v. Wheeler,* 7 Id. 13; *Trawick v. Harris,* 8 Id. 311, *Earle v. Earle,* 9 Id. 630; *Lee and wife v. Kingsbury,* 13 Id. 68; *Methery v. Walker,* 17 Tex.R. It is not the design of the Constitution to protect wild land from forced sale.

. . . .

... [T]he exemption guaranteed by law and the Constitution, is based upon the supposition that there is a homestead in fact, in actual existence; *that there is a home in which the citizen and his family are or might be settled* ...

*A homestead necessarily includes the idea of a house for residence or mansion house. On town or city lots it cannot exceed a certain value. But on the rural homestead there is no such restriction. The dwelling may be a splendid mansion, or a mere cabin or tent, open to the winds and rains of heaven. If there be either, it is under the protection of the law; but there must be a home residence before the two hundred adjoining acres can be claimed as a homestead.* Where a home, residence or settlement has once been acquired on lands, it would not be necessary that there should be continuous, actual occupation, to secure the land from forced sale ... (emphasis added). *Franklin v. Coffee,* 18 Tex. at 413.

Noting that once intent has been established the parties could temporarily leave the property, the court went on to further say:

Nor would it be necessary to secure the exemption, that a house should be built or improvements made. But there must be a preparation to improve, and this must be of such a character and to such an extent as to manifest beyond doubt, the intention to complete the improvements *and reside upon the place as a home.* (emphasis added). *Franklin v. Coffee,* 18 Tex. at 417.

No mention is made by the Court in *Coffee* that the family's home be used for economic support, or that the "adjoining acres" contribute, economically, to the fam-

ily. All that was required was that they intended to reside upon the place as their home. The home's purpose was identified with terms like "asylum, refuge" and identified uses for the home included "tranquility, serenity, shelter and protection."

A careful reading of other early authorities are consistent with the *Coffee* opinion. It is the claimant's use of the property as a "home" which establishes the right to a homestead exemption. Some of these authorities include:

(a) *Posey v. Bass*, 77 Tex. 512, 14 S.W. 156 (1890). This homestead claimant worked in town as a land agent and merchant, owning his office with a partner, while residing on seven acres of land located just inside the city limits of the town. Obviously, he did not principally support his family through farming or ranching. The principal issue before the Supreme Court was whether the rural character of his homestead had changed because of encroachment of the town. The issue, as framed was:

> We think there can be no doubt but that *at the time Posey acquired and established his residence* upon the land now in controversy he became entitled to hold it as his homestead. Has he ever parted with that right? In other words, have the circumstances surrounding his house become such at any time as to deprive his *residence* of the character of a rural homestead, and to restrict his claim to *so much of the land as was directly used by him in connection with his residence for the comfort and convenience of his family*? (emphasis added).

*Posey v. Bass*, 77 Tex. at 513, 14 S.W. 156.

Another question was whether or not Posey's business, being located in town, required that his homestead partake of the character of his business. This contention was rejected by the Supreme Court:

> But it may be urged that because his principal business was in town, first as a merchant and then as a land-agent, his homestead should partake of the character of his business, and should be con-

sidered a town homestead. We think not. *Every one is at liberty to make his home in the country, although he may do business in town. It is the place of the homestead that gives character to it, not the business of the head of the family. If it be in the country, it is a rural homestead; if it be in the city, it is an urban residence.* (emphasis added).

*Posey v. Bass* at 514, 14 S.W. 156.

There cannot be a much clearer statement that one can work in the city (i.e. not be engaged in farming or ranching) and still be entitled to a rural homestead. The land directly used by this man for the "comfort and convenience" of his family was all that the Texas Supreme Court looked to in determining that it was a part of his rural homestead.

(b) *Autry v. Reasor*, 102 Tex. 123, 108 S.W. 1162 (1908). Here one parcel of land was detached from the homestead proper and was rented to tenants for a sharing of the crop. On an evidentiary basis, the Supreme Court found, on rehearing, that the detached tract did not form any part of the homestead. The Supreme Court's approach to its analysis is instructive however. The issue presented was whether or not proper intent had been shown to claim the detached tract as homestead. The Court first looked at *Franklin v. Coffee*, 18 Tex. 413, and then *Brooks v. Chatham*, 57 Tex. 31. In the *Chatham* case, the land in controversy was about 10 miles from a tract upon which defendant was residing and occupying as a homestead. The defendant therein argued to the court that he had designated the detached tract as a part of his homestead and intended to occupy it as such and in fact, after an attachment was levied, did actually move onto and settle the land. The trial court found that the homestead claimant had never occupied the detached tract, had made no preparation and had done no act to manifest his intention to appropriate the same as homestead in any way nor done any act reasonably calculated to give notice of his dedication of the same as homestead. In that opinion the Court stated:

There must be something more than mere intention. There must be some act done which will evince an intention to *use it as a home*, or, if *separated from the tract* upon which the home of the family stands, to use it in some way, in connection with the home place, for the *comfort, convenience, or support* of the family, or as a place of business for the head of the family.

The language of our Constitution in reference to homestead upon detached parcels of land is "provided that the same (the detached parcels) may be used for the purpose of a home." *One of the purposes of a rural homestead is to support the family therefrom.* (emphasis added).

*Autry v. Reasor* at 126, 108 S.W. 1162.

In *Autry v. Reasor*, the trial court had also found a lack of any act to use the detached tract as a home and deferring to that finding, the Supreme Court upheld the ruling against the homestead claimant.

However, language of this Supreme Court opinion is "... comfort, convenience, *or* support ..." and "*one* of the purposes ... is to support ...". *Autry v. Reasor*, 102 Tex. at 126, 108 S.W. 1162. Again the Texas Supreme Court ruled that "comfort" and "convenience" were sufficient uses to establish a rural homestead.

(c) *Iken v. Olenick*, 42 Tex. 195 (1875). Also commenting on a fact situation involving a tract of land not contiguous to the tract containing the actual home, the Texas Supreme Court noted a purpose of a home as:

... a lot or tract of land, though detached from that upon which the home is situated, may be said to be used for the purposes of a home when, *by its particular use or appropriation, it contributes to the comfort and enjoyment* of the mansion house as a homestead. (emphasis added).

(d) *Pryor v. Stone*, 19 Tex. 371 (1857). This case stated that "early Constitutions of this state provided for the exemption of the 'homestead of a family'. There was no constitutional definition of the term nor limitation of the extent of the exemption." The court then stated:

All that by fair construction of the language, is required to entitle the property to exemption, is, that the property should be *used for the convenience or uses* of the head or members of the family. The exemptions should not be construed as reserving merely a residence where a family may eat, drink and sleep, but also a place where the head or members may pursue such business or avocation as is necessary for the support *and comfort* of the family. (emphasis added).

The particular business or avocation of this homestead claimant in this particular case was not agriculture, but was the practice of law.

(e) *Cocke v. Conquest*, 120 Tex. 43, 35 S.W.2d 673 (1931). The court was once again faced with segregated tracts of land claimed as rural homestead. It noted that

[t]he leading and fundamental idea connected with a homestead is unquestionably associated with that of a place of residence for the family, where the independence and security of a home may be enjoyed, without danger of its loss, or harassment and disturbance by reason of the improvidence or misfortune of the head or any other member of the family. It is a secure asylum of which the family cannot be deprived by creditors. Within its sanctuary, however urgent may be their demands, they cannot intruded. [sic]

(f) *Woodward v. Sanger Brothers*, 246 F. 777 (5th Cir.1918) cited with approval in *Cocke v. Conquest*, 35 S.W.2d at 677. The Fifth Circuit Court of Appeals, referring to yet another fact situation involving segregated tracts of property, said:

This provision of the Constitution leaves very little basis for distinction between the homestead consisting of one tract of not more than 200 acres, and one made up of several parcels, aggregating not more than 200 acres. It is however, a homestead which the Constitution exempts, and not 200 acres of land in the country. *A fundamental idea involved*

**563**

*is a place of residence.* While circumstances might exist which would fix or maintain the homestead character of the land without actual residence, yet residence is normally an element. Whatever of physical difficulty there might be in actually living on more than one tract of land was doubtless under consideration when the quoted provision was incorporated in the fundamental law. At most, only a very small part of 200 acres of land can be used as a place of actual residence. Whatever effect this actual holding for this purpose may have in impressing the homestead character has not, by the terms of the fundamental law, been confined to the tract of actual domicile. The fundamental law making no distinction, there should be a hesitancy in placing a judicial limitation upon the homestead rights based upon an assumed difference between a homestead of a single tract and a homestead consisting of more than one tract.

. . . .

Most of the rural homesteads in Texas furnish the means of living as well as the place of living.

*The law as declared in the Constitution and statutes does not undertake to place any limitation on how the land may be used, other than that it is to be the homestead. There is no warrant for saying that, when a homestead shall be used in the way best calculated to accomplish the purpose of a homestead, it loses its character as a homestead. . . .* (emphasis added).

The framers of our organic law had no thought of exempting 200 acres of land in the country as a home for each family, upon which it members might reside, when they thought proper, but this exemption is only in the event such lands are *used for the purpose of a home.* The exemption is not of any definite number of acres, but of the home, and the number of acres is a limitation placed upon that home. (emphasis added).

*Woodward v. Sanger Brothers* at 780.

Again, a court recognized that not all rural homesteads furnish the means of liv-

ing. Speculative or wild land would not qualify as a homestead. The distinguishing ingredient is not size, nor economic support, but use as a home.

(g) *Lasseter v. Blackwell,* 227 S.W. 944 (Tex.Comm'n App.1921, opinion adopted). Here, the Court disallowed a homestead claim to a detached tract of 160 acres. Factually, the homestead claimant worked in the city, resided on a 31–acre rural tract of land near the city and also claimed a detached tract of 160 acres. It is instructive to note how the Commission of Appeals phrased the issue before it.

The real inquiry, therefore, is, when, if ever, did the 160 acres in Mitchell County become homestead; *that is, when did it partake of the character of a home?* (emphasis added).

*Lasseter v. Blackwell* at 944.

Although the Commission of Appeals did not find the requisite intent or use as to the 160 acres, no one had any question but that the 31 acres was homestead because it was the claimant's actual residence, although the homestead claimant himself worked in the city to support his family.

(h) *Youngblood v. Youngblood,* 124 Tex. 184, 76 S.W.2d 759 (Tex.Comm'n App.1934, opinion adopted). Here the homestead claimant owned two adjoining tracts, one of 53 acres upon which the home was situated, and one of 99¼ acres, which was leased to a daughter and her husband with the understanding that they would give it back when they no longer needed it. The daughter later moved and the claimant's son moved onto the 99¼ acre tract with a similar arrangement. In deciding whether the 99¼ acre tract was impressed with homestead character, the Supreme Court first distinguished *Autry v. Reasor,* 102 Tex. 123, 108 S.W. 1162, stating that it stood as the rule where the tracts were segregated. Here, the court stated the 99¼ acre tract was used for the *"comfort and convenience of the family* in like manner as that on which the home was situated." (emphasis added). Citing *Ruhl v. Kaufman,* 65 Tex. 723, 744 (1883), it stated:

... the actual use of a lot *for the convenience of a family* has always been regarded as the most satisfying evidence of an intention to make it part of the homestead. (emphasis added).

### E. DISTINGUISHING SPENCER

*In re Spencer*, 109 B.R. 715, had cited *Ratliff v. Smith*, 178 S.W.2d 138, 140 (Tex. Civ.App.—El Paso 1943, writ ref'd); *Vaden v. Collier*, 253 S.W. 889 (Tex.Civ.App.—Ft. Worth 1923, no writ), and *In re Moody*, 77 B.R. 580 (S.D.Tex.1987) aff'd 862 F.2d 1194 (5th Cir.1989) for the proposition that a use of the land for support is necessary to establish a rural homestead, and suggests that the support requirement requires some form of economic assistance. The cases cited do not actually stand for that proposition however.

(1) In *Ratliff v. Smith*, 178 S.W.2d 138, the homestead claimant resided on a 320–acre tract of property, claiming 200 acres as homestead. Her husband died in 1915. In 1918 the widow acquired an 80–acre tract of land, contiguous to the west side of the 320–acre tract. In 1931 she sold 200 of the original 320 acres. This left her with 120 acres of the original 320–acre tract and with the 80 acres which she acquired after her husband's death. The issue before the court was whether or not she could designate the 80 acres as part of her homestead. The law at the time required that the homestead of the family be dedicated by the "head of the family". The ruling of the court was that a widow at that time was not eligible under state law to "dedicate" a homestead. Therefore the court found that 80 acres could not be dedicated and claimed as her homestead.

In one paragraph of the opinion, with no authorities cited and wholly unnecessary to the decision, the El Paso Court of Appeals did state that "to constitute a rural homestead the land must be used for a residence and the balance of the tract for the support of the family." What it meant by support was not defined. It could have easily meant "shelter, comfort and convenience, etc.," which meanings would have been consistent with prior Texas Supreme Court

authorities cited herein. In this regard *Ratliff* is correct insofar as it went, but it cannot be understood as a rule of limitation in defining uses required to impress homestead character.

(2) In *Vaden v. Collier*, 253 S.W. 889, the court of appeals was faced with an interesting fact situation. Mr. A.J. Collier, father of W.W. Collier acquired a 320–acre tract of land. His home was on the northern portion of that property. Immediately prior to suffering a judgment he sold the unimproved southern portion of the property to his son. This left the father with less than 200 acres as his homestead prior to the rendition, abstracting and execution of the judgment. Father and son subsequently sold both properties, taking back a note for part of the consideration, and moved to Arkansas. Two or three years later the father and son moved back to Texas, reacquired the two tracts from the party they had sold it to and all of the family, father and son along with an unmarried daughter, moved into the house on the northern portion of the 320 acres. Interestingly enough, when the property was reacquired it was the son who took title to the northern half, the portion with the home, and the father who took title to the southern half of the original 320 acres, the portion with no improvements. The issue before the court was whether or not the judgment lien attached to the southern tract of property since the judgment was against the father and he now owned the unimproved portion. The court ruled that the father's homestead claim to the southern tract, failed to establish the requisite, present intention to establish homestead when he reacquired the 160–acre tract. The judgment lien therefore did attach at the time he took title. In stating the principle of law which applied, the court of appeals said:

> The term "homestead" necessarily includes the idea of a house for residence, either constructed already or in contemplation of construction, accompanied by acts of preparation therefor. (citations omitted)

> Preparations to improve property for use as a home, accompanied by an intention to make it a homestead, fixes a

homestead right in it from that time. (citations omitted).

Mere intention to occupy property as a home at some future time, unaccompanied by preparations so to use it, is not sufficient to make it a homestead. (citations omitted).

A rural homestead may consist of separate tracts of land, if they do not include more than 200 acres, provided one tract is used as a place of residence for the family and the others are used for the purpose of supporting the family. (citations omitted).

*Vaden v. Collier* at 891.

The court's recitation of the need to use a tract for support, when the home is not located on it, was necessary to distinguish the facts at issue and was not stated as a rule of limitation. Here, the house was owned by the son while the vacant tract was owned by the father. The court disclosed that the general rule, allowing vacant tracts to be exempted if used in support of the family, did not apply because the homestead claimant must own both tracts. Here the father did not meet that test; nor did he meet the test for claiming vacant land by a showing of present intent "to establish a residence", coupled with overt acts preparatory for occupying the property. Since he did not own a home, the property was clearly not necessary for comfort or convenience either. Again, the court did not define what it meant by the term "support". In light of then existing Texas Supreme Court precedent, its use of the term support is not contrary to a use of the property for comfort, shelter, convenience, etc.

(3) Most importantly, *In re Moody*, 77 B.R. 580, aff'd 862 F.2d 1194, does not conflict with these earlier Supreme Court cases. Many detailed findings were made by the trial court and discussed by the District Court. Important among those were findings that the property had been rural in character when originally acquired and that the homestead claimant was found to have had the requisite intent to claim the property as homestead when he first moved onto the property. The court stated that once the claim of homestead protection has been established the burden shifts to a creditor to disprove its continued existence and that this burden amounts to a presumption that homestead continues until termination is proved. In this case, the Debtors met even the creditor's idea of a rural homestead in prior years when cattle were raised, only a year prior to the filing of this bankruptcy. No evidence of abandonment of the homestead has been shown, other than the fact that cattle are no longer raised. The *Moody* court found that the trustee in bankruptcy failed to meet its burden of rebutting that presumption and such presumption has not been rebutted here either.

Although the *Moody* court did find cattle grazing on the subject property, the real issue before it was whether the property was urban or rural in character, so its actual use was somewhat peripheral to its decision. It also cited *Posey v. Bass*, 77 Tex. 512, for the proposition that rural property is not converted into urban land solely because a claimant does not derive sole financial support from it. This point further indicates that financial support is not mandatorily required to claim rural property as homestead.

 Texas courts do require some sort of proof that non-contiguous tracts are used to support the family. *Autry v. Reasor*, 102 Tex. 123, 108 S.W. 1162; *Lasseter v. Blackwell*, 227 S.W. 944. Although never explicitly stated, there appears to be a presumption that land contiguous to the homestead under Texas law is used for the purposes of a home. See, e.g., *Nunn On Exemptions*, p. 134 (1931). The reasoning behind this distinction between contiguous and non-contiguous rural tracts, although not clear and unstated, can easily be seen and justified for policy reasons. First, although homestead laws are to be liberally construed, their purpose is not to protect the claimant's land, but rather his homestead, i.e., his residence. Where the tracts are not adjacent to the residential tract they cannot said to be used "for the purposes of a home" in any immediate sense, so it is additionally required that they fur-

ther the purposes of the home by being used in a manner consistent with economic needs or for the convenience or comfort of the home. The fact situation in this case does not involve non-contiguous tracts, but the purpose of going through the exercise of reviewing some of those cases is to emphasize that they continually describe a homestead as being "property used for home purposes". Comfort, convenience, solitude, and shelter are clearly purposes for which a home is stated to be used within the meaning of a homestead under Texas law.

### F. PRIOR CONSTITUTIONAL AND STATUTORY AUTHORITY

Neither the Constitution nor Statutes of Texas as now drafted or as previously drafted, give any indication that only working farms or ranches qualify as rural homesteads. The only element which has ever been required of a non-business homestead is that it be used for the purpose of a home. The original State Constitution of 1845, in Article 2 provided:

Sec. 22. The Legislature shall have power to protect by law from forced sale, a certain portion of the property of all heads of families. The homestead of a family not to exceed two hundred acres of land, (not included in a town or city,) or any town or city lot or lots, in value not to exceed two thousand dollars, shall not be subject to forced sale, for any debts hereafter contracted, nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, in such manner as the legislature may hereafter point out.

The Texas Constitution of 1861, Article 7, Section 22 retained this same language without change as did the Texas Constitution of 1866, Article 7, Section 22. In 1869, the Texas Constitution contained the homestead provision in Article 12, Section 15 which read as follows:

The Legislature shall have power, and it shall be their duty, to protect by law, from forced sale, a certain portion of the property of all heads of families. The homestead of a family, not to exceed two

hundred acres of land, (not included in a city, town, or village,) or any city, town, or village lot, or lots, not to exceed five thousand dollars in value, at the time of their designation as a homestead, and without reference to the value of any improvements thereon, shall not be subject to forced sale for debts, except they be for the purchase thereof, for the taxes assessed thereon, or for labor or materials expended thereon; nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, and in such manner as may be prescribed by law.

This amendment provided that the value of the homestead was to be made without reference to the value of improvements, and provided an exception for claims which were for purchase money, taxes, or labor and materials. Article 12, Section 15 of the Constitution of 1869 was changed to Article 16, Section 51 in the Constitution of 1876 and has been so designated ever since. Article 16, Section 51 of the Constitution of 1876 read as follows:

Section 51. The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village . . .; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family . . .

Article 16, Section 51 was amended in 1970 to increase the value of the homestead exemption in a city to $10,000.00. The Constitution was later amended in 1973 to authorize a homestead exemption for a single adult person. It was also amended in 1983, with regard to the urban homestead exemption, changing the exemption from a value test to a restriction of not more than one acre of land.

The Texas legislature drafted a number of statutory provisions to further articulate the purposes of the state constitution. Texas Revised Civil Statutes of 1879, in Article 2336 provided as follows:

The "homestead" of a family, not in a town or a city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, consisting of a lot or lots not to exceed in value of five thousand at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of the family; provided, also, that any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired.

Texas Revised Civil Statutes of 1895, Article 2396 contained the same language as former Revised Civil Statute Article 2336. A revision was made in 1897 to Article 2396 to provide that the proceeds of the voluntary sale of a homestead would not be subject to garnishment or for sale within six months after the sale. In 1911, Texas Revised Civil Statute, Article 3786 contained the homestead provisions in the same language of its predecessor statutes. Article 3787 was separately drafted that year to provide for the exemption of the proceeds of sale. In 1925 Texas Revised Civil Statute, Article 3833 contained the homestead provision in the same language. In 1969, Texas Revised Civil Statute, Article 3833 was amended to increase the urban homestead exemption to $10,000. In 1973, Texas Revised Civil Statute, Article 3833 was amended to include a homestead right to single adult persons. In 1983 the statute was further amended to provide for the urban homesteads change from a value test to an exemption of not more than 1.0 acres of land. That statute was repealed by the 68th Legislature, 2nd Called Session, which thereafter amended the Texas Property Code, Section 41.001 to provide for the 1.0 acre urban homestead exemption. In 1985, the Property Code, § 41.001 was further amended by relocating the "definition of homestead" to § 41.002. At that time it was stylistically changed to read as follows:

(a) *If used for the purpose of an urban home* ...;

(b) *If used for the purposes of a rural home,* the homestead shall consist of: ... (emphasis added)

In 1989, the statute was further amended by redesignating subsection (c) as (d) and inserting new subsection (c). The new subsection (c) provided that "[a] homestead is considered to be rural, if, at the time the designation is made, the property is not served by municipal utilities and fire and police protection."

This progression of statutory amendments ended up with what is now referred to as the Texas Property Code. Another code, the Texas Government Code, details the powers and duties of a Texas Legislative Council which, in part, was to assist the Legislature in drafting proposed legislation. One purpose of that new legislation was to simplify and clarify statutes within the state of Texas. However, when revising a statute, the council could not alter the sense, meaning, or effect of the statute. See generally, Texas Government Code Annotated, Sections 323.006 and 323.007(b).

As a part of this revision process, the Texas Property Code was enacted. The specific purpose of the Texas Property Code is stated in Property Code § 1.001:

(a) This Code is enacted as part of the state's continuing statutory revision program begun by the Texas Legislative Council in 1963 ... The program contemplates a topic by topic revision of the state's general and permanent statute law *without substantive change.* (emphasis added).

(b) Consistent with the objectives of the Statutory Revision Program, the purpose of the Code is to make the law encompassed by the Code more accessible in understanding by:

(1) rearranging the statutes into a more logical order ...

(4) restating *the law in modern American English to the greatest extent possible.* (emphasis added).

See generally *In re Peters*, 91 B.R. 401, 405–406 (Bankr.W.D.Tex.1988).

### CONCLUSIONS OF LAW

■ This court does not find the stylistic change in Texas Property Code § 41.-002(a) and (b) evidence any intent to change the substantive law of what constitutes a Texas rural homestead. The 1989 addition of new paragraph (c) does, however, appear to be an effort to establish a definition of certain property as rural where it is not "served with municipal utilities and fire and police protection." The Texas Legislature may not have the power to amend the definitions of "in a city, town, or village" or "not in a city, town, or village" that appear in the Constitution. See, McSwain, *The Texas Business Homestead in 1990,* 42 Baylor L.Rev., Number 4 (1990), p. 661. This court has elected to treat that provision as creating a rebuttable presumption.

■ This case is not the frequently encountered problem where the urban area is encroaching on what was once clearly a rural area. The opinions of our colleagues have clearly and adequately stated the law in such situations. Here there are no other urban characteristics within a couple of miles of the subject property. These Debtors' property is clearly rural in character. Furthermore, the property is also clearly used for some purpose of a home. It provides shelter, recreation, comfort and convenience as well as solitude. While economic or subsistence support may demonstrate "a use" to which a rural tract may be put to impose upon it homestead character, they do not represent "the only uses" which satisfy the law in Texas. Texas case law has been consistent in this regard. See *Franklin v. Coffee,* 18 Tex. 413 (homestead is defined as the place where the home is located); *Posey v. Bass,* 77 Tex. 512, 14 S.W. 156 (land used for comfort and convenience of the family); *Autry v. Reasor,* 102 Tex. 123, 108 S.W. 1162 (Comfort, convenience, *or* support of family held sufficient); *Iken v. Olenick,* 42 Tex. 195 (contribution to the comfort and enjoyment of the mansion house held sufficient); *Pryor v. Stone,* 19 Tex. 371 (all that is required is that the property be used for convenience *or* uses of the family); *Cocke v. Conquest,* 120 Tex. 43, 35 S.W.2d 673 (homestead is

the place of the residence); *Woodward v. Sanger Bros.,* 246 F. 777 (law not undertake any limitation on how land is to be used ... if used for the purpose of a home); *Lasseter v. Blackwell,* 227 S.W. 944 (question is, when does land partake of the nature of a home); *Youngblood v. Youngboood,* 76 S.W.2d 759 (comfort and convenience of the family); *Ruhl v. Kaufman,* 65 Tex. 723 (convenience of a family). These Debtors' 104 acre tract is their home and all of it is used for purposes which characterize it as a Texas rural homestead. The objections to exemption will be overruled.

An order consistent with these Findings of Fact and Conclusions of law will be entered of even date herewith.

IT IS SO ORDERED.