**In re Willie Katherine McCAIN, Debtor.**

**Bankruptcy No. 92–20682.**

United States Bankruptcy Court,
E.D. Texas,
Marshall Division.

July 28, 1993.

Dale Long, Tyler, TX,

Willie Katharine McCain, Atlanta, TX,

Wm. Randall Wright, Hope, AR, Trustee.

Phillip Cockrell, Texarkana, TX.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before this Court the Amended Objection of First National Bank–Linden, Texas, to Debtor's Claim of Exemptions pursuant to regular setting in Tyler, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Fed. R.Bankr.P. 7052 and disposes of all issues before the Court.

## FACTUAL BACKGROUND

The issue in this dispute concerns Willie Katherine McCain's, hereinafter referred to as ("Debtor"), homestead exemption claim in this bankruptcy proceeding.[1] Necessary to this opinion is a chronological review of the facts relevant to this case. Sometime prior to 1977, Debtor's uncle, James E. Stewart, and brother, John Thompson, III, purchased 150 acres of land in the William Crabtree Survey, A–180 located in Cass County, Texas. John Thompson, III, owned an undivided two-third interest in the land purchased with James E. Stewart owning the remaining undivided one-third. Approximately 120 acres of this land was platted, subdivided and provided with road access. Soon thereafter, James E. Stewart and John Thompson, III, began to sell lots from the property which had been named Briarwood Acres. The re-

---

**1.** Debtor has chosen to utilize Texas state law exemptions pursuant to 11 U.S.C.A. § 522(b)(2)  (West 1979 and Supp.1992).

maining portion of the property, which consisted of approximately 28.38 acres, was left undisturbed and is referenced on the plat as "Briarwood Acres—Phase II."

In 1977, Debtor purchased John Thompson, III's, undivided interest in the property. However, it was not until 1982 that Debtor and James E. Stewart formalized their respective ownership shares in a written document. Although Debtor was married at the time, her husband was not granted an ownership interest in the property. Sometime in 1979 Debtor, together with her family, moved to Atlanta, Texas, a small community approximately five miles from Briarwood Acres. In June 1984, James E. Stewart and wife sold to Debtor their one-third undivided interest in a 5.056 acre tract located centrally in the 28.38 acre portion referred to as Briarwood Acres—Phase II. Henceforth in this opinion, all references to this 28.38 acre tract in whole or in part shall be by use of the term ("the Phase II property"); the developed portion of Briarwood Acres shall be referred to simply as ("Briarwood Acres"); and all collective references to all the various properties at issue shall be through the term ("the Briarwood properties"). Contemporaneous with this transaction, Debtor sold a one-half interest in the 5.056 acre tract, henceforth ("the 5.056 acre tract") to her husband. Subsequently, Debtor and her husband began building a home on the 5.056 acre tract. After the construction of the home was completed, Debtor and her family moved onto the property in late December 1984.

From 1980 to 1987, fourteen lots were sold from Briarwood Acres. In all of these sales,

James E. Stewart, wife, Emma Lou Stewart, and Debtor signed the documents of sale in their capacity as grantors. In fact, the initiating language in all the documents of conveyance contain the phrase, "WILLIE K. THOMPSON MCCAIN, owning and occupying a homestead separate from the herein described land ..." Furthermore, it is clear that all of these conveyances were subject to restrictive covenants conditioning the purchasers' use of the property.[2] It is unknown how many lots were sold in Briarwood Acres prior to Debtor acquiring an ownership interest in 1977.

On September 25, 1987, Debtor and her husband executed a document designating the 5.056 acre tract as their homestead. (Pl. Exh. 28). This document was executed for the purpose of obtaining credit and was filed for record on September 30, 1987. In February of 1990 a certified copy of a plat of the Briarwood Properties, which had been prepared by James E. Stewart, was recorded with the Cass County Clerk's office. (Pl. Exh. 29). The principal purpose behind this dedication was to obtain the services of Cass County in maintaining the roads in Briarwood Acres. The plat was approved and accepted on February 12, 1990.

In April of 1992, the First National Bank of Linden, Texas, hereinafter referred to as ("Bank") obtained a judgment against Debtor in the amount of $138,400.13. This judgment was abstracted in the Cass County records in May of 1992. On June 15, 1992, Debtor, without her husband's joinder, filed for relief under Chapter 7 of the Bankruptcy Code. In her schedules, Debtor claims an exemption for 71 acres of property that is not

---

2. Typical of the language used in these restrictive covenants is the following:

It is further covenanted and agreed that the use of the above-described property is restricted and limited to single-family residential use, and no commercial, industrial or agricultural other than ordinary family agricultural uses shall be permitted, and any residence hereafter placed, constructed or moved onto said property shall contain a minimum of 1800 square feet under roof, and the outside of said residence shall be principally of brick or masonry construction. No large animals such as horses or cows shall be kept on any lots of less than three acres, and no chickens or other fowl will be raised on the land. No automobiles shall be

stored on the lot, so as to be visible from the outside of the lot, unless they display valid, current registration tags and inspection stickers. No tent, trailer or mobile home shall be occupied or used as a residence, and none shall be permitted to stand on said premises for periods of time in excess of thirty (30) days. The above-described land shall not be used to provide access to any adjoining land which is outside of said J.A. Pierce 150–acre tract. These covenants and agreements shall run with the land, and any violation thereof may be enforced by any of the grantors or their heirs or personal representatives by a suit for injunction or for damages or for both, at their election.

described in any fashion. The lack of description of the property was Bank's first objection. The Bank's objection was based on the fact that it was impossible to tell exactly what Debtor was claiming as exempt property and it is clear from a review of the schedules filed that Debtor was being less than forthright about the exact nature of her homestead exemption claim. However, the testimony makes it clear that Debtor claims her interest in Briarwood Acres (consisting of all remaining unsold lots), the Phase II land, and the 5.056 acres as her rural homestead pursuant to the laws of the State of Texas.[3]

Bank complains that from the moment Debtor first purchased an interest in Briarwood Acres in 1977 until this day, Briarwood Acres has always been and continues to be a rural subdivision. Bank points to the fact that Briarwood Acres is subdivided, platted as a rural subdivision, and offers lots for sale (over fourteen of which have been sold) available in sizes ranging from 1.19 to 5.85 acres. Thus far, eleven homes have been constructed pursuant to a common design. Briarwood Acres is dissected by six streets with accompanying street signs. All lots are serviced by electric utilities and phone hook-ups. Finally, in front of Briarwood Acres, a sign stands listing the phone numbers of James E. Stewart and John Thompson, III. Presumably, the sign is intended as a means by which potential purchasers could direct their inquiries. Bank asserts that such a planned development is a commercial enterprise which is inconsistent with Debtor's present homestead claim.

Bank alleges three additional grounds for a denial of Debtor's exemption claim. First, Bank argues that the validity of a rural homestead claim must rest on the necessity of the land claimed to the support of the claiming family. Bank points to the fact that

both Debtor and her husband have outside employment. Debtor is presently employed as a truck dispatcher and her husband is employed by the state forest service. No income has been received from the Briarwood properties in the last 18 months. Furthermore, no farming or ranching activities are present and it is undisputed that Debtor does not own any farm implements.

Second, Bank maintains that on several occasions Debtor's past acts provide a predicate for discerning whether Debtor ever possessed a requisite intent to make all of her interest in the Briarwood properties her rural homestead. Bank points to the events surrounding the partition and conveyancing of the 5.056 acre tract in June 1984. Through this transaction, Debtor and her husband obtained a separate interest in the Briarwood properties apart from that held by James E. Stewart and his wife. This tract was later designated as Debtor's and her husband's homestead and was filed of record in September 1987. As a result of this transaction, Debtor and her husband were able to obtain financing to build a home on the property. It is not disputed that Debtor has not conveyed her interest in any additional Briarwood property to her husband. Furthermore, on at least two other occasions, Debtor has distinguished her ownership interest in the 5.056 acre tract from that of her interest in the Briarwood properties as a whole. In both 1985 and 1988 Debtor's financial statements listed her interest in the Briarwood properties separately from that of her interest in the 5.056 acres. Bank contends that taken as a whole, this evidence supports a finding that Debtor has never possessed a requisite intent to make her remaining interest in the Briarwood properties her rural homestead.

---

3. The exact allocation of the property interests between Debtor and James E. Stewart and wife Emma Stewart is not clear. Debtor's schedules and testimony seem to indicate that her claim to 71 acres of rural homestead consists of the separately owned 5.056 acre tract combined with 66 acres representing her two-thirds interest in both Briarwood Acres and the Phase II property (minus the 5.056 acre tract). Adding in the respective one-third interest of James E. Stewart and

Emma Stewart suggests that approximately 100 acres of land in Briarwood Acres and the Phase II property remains; approximately 76.68 acres in the former and approximately 23.32 acres in the latter. Applying Debtor's two-thirds ownership interest to these amounts yields 51.02 acres of Briarwood Acres and 15.53 acres of Phase II property directly attributable to Debtor's interest in these properties.

Third, Bank argues that even limiting Debtor's homestead claim to the 5.056 acre tract is excessive. The basis of Bank's position is that because Debtor's home is located next to the subdivision scheme of Briarwood Acres, it is constructed in an urban environment. As a quasi-urban homestead, Bank insists that Debtor be allowed only one acre of land.[4] Debtor disagrees.

Debtor strenuously takes issue with Bank's characterization of the Briarwood properties as urban type property. Debtor points to the fact that the Briarwood properties are five to six miles away from the nearest town. There are no municipal utilities available and electricity is provided by a rural electric company. As for police and fire protection, Debtor relies solely on the Cass County Sheriff and Constable and fire protection is provided by the City of Atlanta on a discretionary basis. Debtor obtains her water from a well and claims to heat her home with firewood cut from the property. Debtor claims that her family hunts both deer and squirrels on the property, and testified to some minimal amount of recreational riding of horses and all terrain vehicles on the property. While Debtor admits that she does not engage in any agricultural or ranching activities, she points to a sale of a substantial amount of timber in 1990 as a quasi-agricultural use. Debtor's husband testified that he "cruises" the timber in maintaining its value on the property. However, it is not disputed that with the exception of this one sale, no other sales have taken place nor have any additional concrete steps been taken by Debtor and her husband to promote additional timber sales from the property. Finally, through the use of an aerial photograph, Debtor points to the fact that the area surrounding the Briarwood properties is predominately rural in setting. The matter was taken under advisement.

## DISCUSSION OF LAW

During the hearing, both parties cited the recent holding of the Fifth Circuit in *Matter of Bradley*, 960 F.2d 502 (5th Cir.1992) as supportive of their relative positions. In *Bradley*, the debtor, as an investor in a partnership, purchased a 130 acre tract of rural property located within the city limits of West Lake, Texas. The property was purchased for the purpose of future development. Debtor occupied 15 acres of property in the center of this tract of land as her homestead. Subsequently, the partnership failed and debtor purchased the remaining interests of her fellow partners in the 130 acre tract of land. The evidence indicates that debtor grew hay, raised cattle and horses on the property and treated her income from the property as farm income for tax purposes. In 1985 debtor granted a lien on approximately 115 acres of the property to secure a business loan. Contemporaneous with the execution of this business loan, debtor executed a homestead disclaimer on the 115 acre tract. After seeking relief under Chapter 11 of the Code, debtor attempted to avoid the creditor's lien on debtor's property as an impermissible encumbrance on a rural homestead. While acknowledging debtor's entitlement to 15 acres of the property, the bankruptcy court held that the remaining 115 acres of the tract was vacant development property not susceptible to a homestead claim. The district court affirmed the bankruptcy court's judgment. The Fifth Circuit Court of Appeals reversed. The Fifth Circuit found, inter alia, that debtor's residence on the 130 acres and usage of the entire tract of land to grow hay and raise livestock dispositively established the homestead usage of the property. More germane to this opinion is the finding of the Fifth Circuit that debtor's intent to develop the property in the future did not defeat a present homestead

4.  (a) If used for the purposes of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than one acre of land which may be in one or more lots, together with any improvements thereon.

(b) If used for the purposes of a rural home, the homestead shall consist of:

(1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or

(2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.

Tex.Prop.Code Ann. § 41.002 (Vernon Supp. 1993).

claim. 960 F.2d at 509. However, the court noted that had debtor successfully sold or leased part of the property, the court's conclusion might have been different. 960 F.2d at 509.

Aside from the applicability of the *Bradley* decision to the facts in this case, the parties dispute whether a prerequisite to the claim of a rural homestead is a demonstration that the land claimed is used in such a fashion as to provide an economic benefit for the support of the claimant's family. There are two lines of thought on this subject as demonstrated by the cases of *In re Spencer*, 109 B.R. 715, 717–718 (Bankr.W.D.Tex.1989, J. Clark) and *In re Mitchell*, 132 B.R. 553 (Bankr.W.D.Tex.1991, J. Kelley). In *Spencer*, Judge Clark held that when an ostensibly rural property is used solely as a residence and such property does not provide a pronounced economic benefit to the homestead claimant, such property can be considered an urban homestead subject to the one acre limitation. Significant to Judge Clark's opinion was a finding that the debtor's property was located near a city (three miles) and that debtor enjoyed the attendant benefits of city living. In contrast, Judge Kelley in *Mitchell* held that a claimant to a rural homestead need not demonstrate economic usage of the homestead. In Judge Kelley's opinion, use of the land claimed for "shelter and protection, comfort, convenience, and enjoyment of the home are also permissible uses." *Id.* at 557. Judge Kelley buttressed his conclusion with an exhaustive analysis of Texas case law.

The Texas Property Code considers a homestead to be rural if it is not serviced by municipal utilities or police and fire protection. Tex.Prop.Code Ann. § 41.002(c) (Vernon Supp.1993). To the extent such a property is used for a rural home, a family may claim up to 200 acres of land for a homestead. Tex.Prop.Code Ann. § 41.002(b)(1) (Vernon Supp.1993). This right is constitutionally guaranteed. Tex. Const.Ann. art. 16, § 51 (Vernon Supp.1993).

After a review of the cases cited by Judge Kelley in *Mitchell*, this Court is convinced that the usage of a rural homestead for the purpose of shelter and comfort is a sufficient usage to support a rural homestead claim. There is no requirement in either the Texas Constitution or relevant statutes which obligate a rural homestead claimant to derive economic support from the land claimed as homestead and none will be created by this Court. In order to assert such a successful claim, this Court is in accord with *Mitchell* that a rural homestead claimant must merely prove that the land is rural in character and that the claimant intends to use it as a home. 132 B.R. at 568. Bank's position that Debtor must demonstrate economic benefit and support for the family from the claimed homestead is rejected.

Given the distinctive factors present in Debtor's claim to the 5.056 acre tract, her interest in the Phase II property and her interest in Briarwood Acres, the Court will address each piece of property individually.

*THE 5.056 ACRE TRACT*

In Texas, for a homestead claimant to establish a homestead, such claimant must demonstrate an intent to claim such property as homestead and combine this intent with an overt act evidencing homestead usage. *Matter of Kennard*, 970 F.2d 1455, 1458 (5th Cir.1992); *Matter of Bradley*, 960 F.2d 502, 507 (5th Cir.1992). This Court finds that Debtor has conclusively established her entitlement to claim this 5.056 acre tract of land as her rural homestead. The rural nature of the 5.056 acre tract is beyond question. This property is located approximately five miles from the nearest town and is not serviced by any municipal utilities or regular police and fire protection. As demonstrated by an aerial photograph, all of the property surrounding this tract and the remainder of the Briarwood properties consists of pastures or timber land with a sprinkling of homes. As for usage, Debtor and her family have lived on the 5.056 acre tract since late 1984. At all times, Debtor's presence on this property has been open and notorious. Debtor's family obtains its water from a well and the home is heated with firewood cut on the premises. In construing Texas case law on this subject the Fifth Circuit has held that such usage is sufficient evidence to demonstrate the requisite intent and overt act necessary to establish a homestead claim. *Kennard*, at 1459;

*Bradley,* at 507. Bank's objection to Debtor's entitlement to this 5.056 acre tract of land as rural homestead is overruled.

## THE BRIARWOOD ACRES RESIDENTIAL DEVELOPMENT

■ Ever mindful of the lessons of the *Bradley* decision, this Court must find that Debtor has failed to establish an entitlement to claim a rural homestead in her interest in the rural subdivision known as Briarwood Acres. The Court agrees with Bank's characterization of this property as a commercial development. The Court observes that at the time Debtor purchased her brother's interest in the Briarwood properties, Briarwood Acres was already subject to commercial development. This portion of the land is subdivided and platted, over fourteen lots have been sold and eleven homes have been constructed. The lots range in size from 1.19 to 5.85 acres and development on these lots is subject to a common design scheme. All the lots in the subdivision are accessed by surfaced roads which are maintained by Cass County, Texas, pursuant to a dedication of the plat of Briarwood Acres in February 1990. Debtor's reliance on the *Bradley* decision is, under these facts, misplaced.

In *Bradley,* the partnership attempting to develop the land claimed as a rural homestead did not see the development scheme come to any kind of fruition. In fact, the development scheme ceased and the debtor in *Bradley* purchased all other partnership interests thereby terminating the previous ownership regime that was attempting to develop the property. This case is markedly different from the situation in *Bradley.* The debtor in the instant case became an undivided owner in the property as a development project and there is no definitive line that would mark the departure from that effort and the conversion of that property to a homestead as in the *Bradley* case. In this case, the development still exists, the ongoing sales efforts still exist, and the claimed conversion from an ongoing commercial development to a rural homestead is simply not demonstrated by any evidence presented by the Debtor.

■ Debtor has attempted to analogize this situation to those cases in which a long time rural homestead is converted to a residential development because of some encroaching urban area that makes the property more valuable for that purpose. The line of cases dealing with the amount of development that is necessary to constitute a forfeiture of the homestead exemption claimed is simply not applicable to this case. In the instant case the Court is not dealing with a conversion from an admitted homestead to a commercial development but dealing with an attempt to convert an admitted commercial development to a homestead such as was done in the *Bradley* case. The facts of this case are distinguishable from the *Bradley* case and are fatal to Debtor's homestead claim. In *Bradley* the character of the ownership and the use of the property changed dramatically when Debtor bought out the former partners in the partnership and proceeded to use the former development property as a single unit which constituted the homestead. In this case there has been absolutely no change in the ownership or use of the property involved in the Briarwood Acres residential development from the date of Debtor's purchase of her undivided interest in the property to the present. Debtor has totally failed to demonstrate the necessary intent coupled with an overt act to make this property a part of a rural homestead. Simply put, the concept of a developed rural subdivision is fundamentally inconsistent with a claim by the developer of the property that the property is being used for the purposes of a rural home.[5] Tex.Prop.Code Ann. § 41.002 (Vernon Supp.1993) (a rural homestead cannot encompass a business homestead); *Bradley,* 960 F.2d at 506 n. 6.

---

5. The Court distinguishes this holding from the situation where a landowner sells off parcels of a rural homestead for developmental purposes without first changing the character of the land through the construction of the type of improvements normally found in urban environments i.e. streets, sewage, electric and phone hook-ups, etc.

The number of lots sold, the acreage of each individual lot, the proximity of the development to an urban environment, and the building restrictions encumbering each lot are also factors to be considered in determining whether the land has lost its susceptibility to a rural homestead claim.

Debtor's attempts to demonstrate the overt act needed to convert this property from a commercial development to a homestead were not convincing. Her claims of using the unsold portions of land for hunting were vague and somewhat lacking in credibility given the proximity of other homes. It is undisputed that the developed portion of Briarwood Acres was not used for the growing of crops or the grazing of animals. The only quasi-agricultural usage in evidence is Debtor's sale in 1990 of approximately $45,-000.00 worth of timber from this property as well as the Phase II property and the 5.056 acre tract. However, the Court finds that this one-time sale of timber does not constitute usage of Briarwood Acres as homestead. Since the sale of this timber, Debtor and her husband have not taken any steps to replant trees for future cuttings. In fact, this Court is more convinced that this sale was motivated solely to benefit the tightened cash flow situation of both Debtor and her partner James E. Stewart.

Finally, the Court places great emphasis on the facts surrounding the fourteen conveyances of property from the time Debtor first obtained an ownership interest in Briarwood Acres. All of these conveyances listed the grantors as Debtor, James E. Stewart and wife, Emma Stewart. Because Debtor's husband did not possess an ownership interest in Briarwood Acres, his signature was unnecessary. If such land was at any time Debtor's and her husband's homestead, then each of these conveyances is void for lack of Debtor's husband's signature.[6] The Court must presume this was not the Debtor's intent. Accordingly, the Court must find that Debtor has failed to demonstrate that she ever had the requisite intent to make her interest in the remaining lots in Briarwood Acres her rural homestead. Bank's objection to Debtor's claim of exemption as to this property is accordingly sustained.

THE PHASE II PROPERTY

■ Aside from the 5.056 acre tract of land which Debtor owns outright, Debtor's interest in the remaining portion of the Phase II property consists of her undivided two-thirds interest in 23.32 acres of land. This property consists of a rectangular block adjacent to the residential development portion of Briarwood Acres. While part of the plat filed of record in February 1990, this land has not been subdivided for development although it is clear that this land is slated for future development. Debtor attempted to paint a picture at trial of use of this property for obtaining firewood, hunting deer and squirrels and the recreational riding of horses and all terrain vehicles. There was testimony that Debtor's two horses were pastured on this land but the evidence was not at all persuasive on that point and the Court finds that the two horses were actually pastured on her brother's land on one of the lots in the Briarwood Acres residential unit. Although Debtor attempted to paint a picture of constant use of the entirety of the property for obtaining firewood, hunting and recreational uses, the details of the testimony were simply not supportive of that picture. Any use of this property for hunting or cutting firewood has been very minimal and the Court is simply not convinced that the testimony of Debtor and her husband in this regard is at all credible.

Although the questions of homestead status of the Phase II property is a much closer question, the Court must determine that Debtor has failed to establish her use of that property as a rural homestead. Again, the primary reasons stem from the factual differences between the situation in this case and the situation in the *Bradley* case on which both parties rely so heavily in this action. It is clear that as to the 5.056 acre tract of land the Debtor in this case did exactly what the debtor in the *Bradley* case did which was to purchase the undivided interest of her partner in that portion of the development property and began to use that as her rural homestead. As to the remainder of the Phase II property, there was no change in the ownership regime of that property nor was there any change in the character of the use of the property except that Debtor may have been on the property more frequently since she moved in much closer proximity

6. The Texas Constitution requires the written consent of both spouses before homestead property can be conveyed. Tex. Const.Ann. art. 16, § 50 (Vernon Supp.1993);

when her home was completed on the 5.056 acre tract. However, this action does not demonstrate an intent to convert the Phase II development property from development property to a rural homestead. In fact, the Debtor's actions demonstrate exactly the opposite and that is to retain the Phase II development property in its undivided ownership status and available for future development. Again, it must be emphasized that the Court is not dealing with a situation where a debtor is attempting to sell portions of a long standing homestead but instead is dealing with a situation where a debtor is claiming to have converted a long-standing development project to a homestead. Debtor's actions simply do not support any change in intent or usage such as was so clearly demonstrated in the *Bradley* case.

■ Emphasis should not be placed on the fact that Debtor owns an undivided ownership interest in the property. The undivided ownership interest is not a factor hindering Debtor's homestead claim. This conclusion is mandated by Texas case law. *Sayers v. Pyland,* 139 Tex. 57, 161 S.W.2d 769, 773 (1942); *Travelers Ins. Co. v. Nauert,* 200 S.W.2d 661, 664 (Tex.Civ.App.—El Paso 1942, no writ) (It is elementary that a homestead may be established on an undivided interest in lands); *Atkins v. Schmid,* 129 S.W.2d 412, 414 (Tex.Civ.App.—Dallas 1939, no writ); *Hamm v. Brown & Horn,* 29 S.W.2d 431, 433 (Tex.Civ.App.—San Antonio 1930, no writ); *Nance v. Rucker,* 294 S.W. 294 (Tex.Civ.App.—Texarkana 1927, no writ) (A tenant in common's claim to a homestead interest in common property is limited to that property actually used for homestead purposes); *Boone v. McBee,* 280 S.W. 295, 297 (Tex.Civ.App.—Austin 1926, no writ); 43 Tex.Jur.3d *Homesteads* § 48 (1985). The only importance of the undivided ownership status of Debtor's interest in the property is the fact that that status has not changed from the date of Debtor's acquisition of the interest in the property and is simply an element to be measured in determining her intent and in this case the lack of an overt act to change the property from a commercial development to a rural homestead. Debtor's actions clearly demonstrate that it was her intent to convert the 5.056 acres to

her rural homestead and remove it from the development property through purchasing her partner's interest and conveying an undivided one-half interest to her spouse and subsequently constructing a home thereon. This Court finds that she clearly demonstrated a lack of an intent to convert the remainder of the property to a homestead interest by simply continuing the ownership of the property as she had held it from inception and by making no change in the use of the property other than the fact that she moved in closer proximity upon the completion of her home. These actions convince this Court that there was no intent to claim that property as a rural homestead until such a claim became a useful device to escape the judgment abstracted against her by Bank.

It is the holding of the Court that Debtor has demonstrated her entitlement to claim the 5.056 acre tract on which her house sits as her rural homestead. It is also the holding of the Court that Debtor has failed to demonstrate any entitlement to claim her undivided interest in the remainder of the property as a rural homestead and therefore, to that extent, Bank's objection to Debtor's claim of exemptions is sustained. Debtor will be required to amend her claim of exemptions to set forth the claim as to the 5.056 acre tract with particularity within 30 days. Upon her failure to do so, any party in interest may move for dismissal of this proceeding.